923 So.2d 118 (2005)
Quincy L. ADAMS, Jr., et al.
v.
OWENS-CORNING FIBERGLAS CORPORATION, et al.
No. 2004 CA 1589.
Court of Appeal of Louisiana, First Circuit.
September 23, 2005.
*120 J. Burton LeBlanc, IV, Cameron R. Waddell, Brian F. Blackwell, Sandra A. Jelks, Chad Dudley, Jody E. Anderman, Charles S. Lambert, Jr., LeBlanc & Waddell, LLP, Baton Rouge, for Plaintiffs/Appellants Quincy L. Adams, Jr., et al.
Lisa A. Condrey, Ward & Condrey, LLC, Covington, for Defendant-Appellee C.V. Harold Rubber Co., Inc.
Before: PARRO, KUHN, and WELCH, JJ.
PARRO, J.
The plaintiffs appeal a judgment granting summary judgment in favor of C.V. Harold Rubber Co., Inc. (CVH) and dismissing their claims against it. We reverse and remand.

FACTUAL AND PROCEDURAL BACKGROUND
In this asbestos exposure suit, several hundred plaintiffs claim damages for illnesses and disabilities suffered as a result of work-related exposure to asbestos at various industrial and commercial facilities in Louisiana. The plaintiffs allege that the multiple defendants named in the suit manufactured, distributed, applied, or removed asbestos materials, and that as a result of the defendants' negligence, strict liability, fraudulent concealment of information, conspiracy, alteration of medical studies, failure to warn of health hazards, and other fault, the plaintiffs were exposed to and inhaled quantities of asbestos fibers, causing their illnesses.[1]
CVH was named in plaintiffs' sixteenth supplemental and amending petition as an asbestos manufacturer/supplier defendant, against whom claims of strict liability and negligence were alleged.[2] CVH filed a motion for summary judgment, claiming it could not be strictly liable because it did not manufacture any asbestos-containing products, but was a non-manufacturer seller of various rubber products, such as hoses, and of some asbestos-containing gaskets manufactured by other companies, which it did not hold out or label as CVH products. CVH further stated it was not an exclusive distributor and never had the type of relationship with an asbestos manufacturer that would qualify it as a "professional vendor" for imposition of strict liability. Regarding the negligence cause of action, CVH stated there was no evidence that it knew or should have known that the asbestos gaskets it sold were defective or hazardous to health. Finally, CVH contended it could not be liable, because there was no evidence it ever sold such products to sites where the plaintiffs might have been exposed to asbestos, and therefore the plaintiffs could not establish that exposure to asbestos in those products ever occurred or was a substantial factor in causing their illnesses.
The motion was supported by an affidavit from James J. Reilly, the president of CVH, who stated the only asbestos-containing *121 products ever sold by CVH were rubber-encapsulated asbestos gaskets manufactured by other companies. He further attested that CVH never altered nor materially modified these products in any way; did not put its name, logo, or other CVH identification on the asbestos gaskets; and did not market or represent these products as its own. In addition, Reilly said CVH was never the alter ego of any gasket manufacturer and exercised no control over the manufacture, distribution, or marketing of any asbestos-containing gasket. Finally, Reilly stated that during the relevant time period involved in this litigation, CVH had no knowledge of any potential hazards associated with the use of asbestos-containing gaskets and had no warnings from their manufacturers concerning such hazards.
The plaintiffs opposed the motion and supported their opposition with a copy of Reilly's deposition and attachments, including the plaintiffs' responses to interrogatories propounded by CVH; a number of CVH invoices for sales of asbestos-containing gaskets, hoses, and other products; information printed from the CVH web site describing the company's business as a fabricator and distributor of industrial products; and a copy of minutes from a 1956 meeting of The Asbestos Textile Institute Air Hygiene Committee showing the asbestosis-cancer link was discussed. The plaintiffs also submitted an affidavit from a man who delivered CVH products bearing CVH identification to facilities where some of the plaintiffs worked. The plaintiffs claimed this evidence showed there were genuine issues of material fact concerning CVH's status as a manufacturer of asbestos-containing products, its delivery of those products to work sites where the plaintiffs were exposed to asbestos, and that CVH knew or should have known of the hazards associated with such products.
After considering the evidence and arguments, the trial court granted the motion for summary judgment and dismissed all claims against CVH.[3] In this appeal, the plaintiffs' only assignment of error is that the trial court erred in granting the motion for summary judgment filed by CVH and dismissing it from this matter.

APPLICABLE LAW

Summary Judgment
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's determination of whether a summary judgment is appropriate. Duplantis v. Dillard's Dept. Store, 02-0852 (La.App. 1st Cir.5/9/03), 849 So.2d 675, 679, writ denied, 03-1620 (La.10/10/03), 855 So.2d 350. A motion for summary judgment should only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The initial burden of proof is on the moving party. However, on issues for which the moving party will not bear the burden of proof at trial, the moving party's burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual support *122 sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial; failure to do so shows there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2); Duplantis, 849 So.2d at 679-80. The court must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226, 236.

Asbestos Exposure as Basis for Liability
A plaintiff in an asbestos case must show, by a preponderance of the evidence, that he was exposed to asbestos from the defendant's products and that he received an injury that was substantially caused by that exposure. When multiple causes of injury are present, a defendant's conduct is a cause in fact if it is a substantial factor generating plaintiff's harm. Vodanovich v. A.P. Green Indus., Inc., 03-1079 (La.App. 4th Cir.3/3/04), 869 So.2d 930, 932. Asbestos cases typically involve multiple defendants and courts have analyzed the cases under concurrent causation, a doctrine which proceeds from the assumption that more than one defendant substantially contributed to the plaintiff's injury. Vodanovich, 869 So.2d at 933.

Strict Liability of Manufacturer
To recover from a manufacturer, the plaintiff must prove that the harm resulted from the condition of the product, that the condition made the product unreasonably dangerous to normal use, and that the condition existed at the time the product left the manufacturer's control. The plaintiff need not prove negligence by the maker in its manufacture or processing, since the manufacturer may be liable even though it exercised all possible care in the preparation and sale of its product. Under pure strict liability theory, the product is on trial, not the knowledge or conduct of the manufacturer. Halphen v. Johns-Manville Sales Corp., 484 So.2d 110, 113 (La.1986).
Louisiana law recognizes products which are "unreasonably dangerous per se" as a separate class of defective products. For products in this category, liability may be imposed solely on the basis of the intrinsic characteristics of the product irrespective of the manufacturer's intent, knowledge, or conduct. A product is unreasonably dangerous per se if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or not, outweighs the utility of the product. This theory considers the product's danger-in-fact, not whether the manufacturer perceived or could have perceived the danger, because the theory's purpose is to evaluate the product itself, not the manufacturer's conduct. Likewise, the benefits are those actually found to flow from the use of the product, rather than as perceived at the time the product was designed and marketed. The fact that a risk or hazard related to the use of a product was not discoverable under existing technology or that the benefits appeared greater than they actually were are both irrelevant. Halphen, 484 So.2d at 113-14.
In a strict products liability case, if the plaintiff proves that the product was unreasonably dangerous per se, a manufacturer may be held liable for injuries caused by that product, although the manufacturer did not know and reasonably could not have known of the danger. Halphen, 484 So.2d at 115-16. The manufacturer who places an unreasonably dangerous product on the market that causes injury to innocent victims is subject to strict liability even if he has not been guilty of any negligence. The liability arises from his legal relationship to the product and is based on the product's unreasonably *123 dangerous condition. Halphen, 484 So.2d at 116-17.
Judge Dennis, the author of Halphen, wrote in Hulin v. Fibreboard Corp., 178 F.3d 316, 334 (5th Cir.1999), that the Louisiana Supreme Court did not create new substantive law in Halphen, but merely compiled and interpreted the law with regard to products liability in Louisiana at that time. Therefore, the legal precepts espoused in Halphen could be applied retroactively. See Abadie v. Metropolitan Life Ins, Co., 00-344 (La.App. 5th Cir.3/28/01), 784 So.2d 46, 78, writs denied, 01-1533, 1534, 1543, 1544, 1629, 1853, and 1931 (La.12/14/01), 804 So.2d 642, 643, and 644, cert. denied sub nom. Territo v. Adams, 535 U.S. 1107, 122 S.Ct. 2318, 152 L.Ed.2d 1071 (2002). Because the plaintiffs' claims in this litigation span several decades during which they were exposed to asbestos, the Halphen criteria are applicable, despite the 1988 enactment of the Louisiana Products Liability Act (LPLA), LSA-R.S. 9:2800.1, et seq.[4] Applying this rationale, in Pitre v. GAF Corp., 97-1024 (La.App. 1st Cir.12/29/97), 705 So.2d 1149, writ denied, 98-0723 (La.11/19/99), 749 So.2d 666, this court declined to apply the LPLA in a products liability action for wrongful death from cigarette and asbestos exposures, because the decedent's exposures occurred before the LPLA's enactment.

Liability of Non-Manufacturer Seller of Product/Negligence
A non-manufacturer/seller in some instances has a duty to warn a purchaser of defects and/or dangerous propensities in the products he sells. In the case of a defective product, i.e., one which is unreasonably dangerous in normal use, the non-manufacturer/seller can be held liable for damages in tort only if he knew or should have known that the product was defective and failed to declare the defect to the purchaser. Hopper v. Crown, 555 So.2d 46, 48 (La.App. 1st Cir.1989), reversed on other grounds, 558 So.2d 1117 (La.1990); see also, Thomasson v. A.K. Durnin Chrysler-Plymouth, Inc., 399 So.2d 1205, 1208 (La.App. 1st Cir.1981). However, a non-manufacturer seller is not required to inspect the product prior to sale to determine the possibility of inherent vices or defects. Nelton v. Astro-Lounger Mfg. Co., Inc., 542 So.2d 128, 131 (La.App. 1st Cir.1989); Harris v. Atlanta Stove Works, Inc., 428 So.2d 1040, 1043 (La.App. 1st Cir.), writ denied, 434 So.2d 1106 (La.1983). Under some circumstances, a non-manufacturer vendor who holds the product out to the public as its own may be classified as a "professional vendor" and may have the same responsibility as a manufacturer. Chappuis v. Sears Roebuck & Co., 358 So.2d 926, 930 (La.1978).[5]

DISCUSSION
For their strict liability claim, the plaintiffs bear the burden of proof at trial that CVH is or was a manufacturer or professional vendor of asbestos-containing products, which CVH denies. Reilly stated *124 in his affidavit that the only asbestos-containing products ever sold by CVH were rubber-encapsulated asbestos gaskets manufactured by other companies. He further attested that CVH never altered nor materially modified these products in any way; did not put its name, logo, or other CVH identification on the asbestos gaskets; and did not market or represent these products as its own. These statements indicate an absence of factual support for the plaintiffs' claim that CVH is or was a manufacturer or professional vendor of asbestos-containing products, thus meeting CVH's initial burden of proof under LSA-C.C.P. art. 966(C)(2).
Accordingly, we review the evidence submitted by the plaintiffs to determine whether they produced factual support sufficient to establish that they would be able to satisfy their evidentiary burden of proof at trial on this issue. In his deposition, Reilly described the fabrication process used by CVH for asbestos-containing gaskets. This process involved large sheets of gasket material consisting of rubber-encapsulated asbestos, which were purchased by CVH from another company. Using this material, CVH employees then cut or punched out the shapes specified by its customers to be used as gaskets in high-temperature applications. Reilly was very careful to say the process was just "cutting" or "customizing" the shape of gasket material to meet a customer's specifications, rather than "making" a gasket. However, although he said the material itself was called "gasket," it was not usable by the customer as a gasket or packing until it was formed into an appropriate size and shape. A manufacturer is defined as "one who changes the form of a commodity or who creates a new commodity." The verb "manufacture" is defined as "to make (as raw material) into a product suitable for use ...; to make from raw materials by hand or by machinery...." Webster's Third International Unabridged Dictionary 1378 (1966). These definitions could be applied to the process described by Reilly, in that the form of the commodity a sheet of asbestos-containing gasket materialwas changed to make it into a product suitable for use by CVH's customers.
CVH argues that the only element that might have made the gaskets hazardous was the existence of asbestos in the gasket material from which they were cut. Since CVH did not put the asbestos in that material, it could not be strictly liable. However, this argument ignores the possibility of "professional vendor" liability, under which the initial manufacturer, as well as the seller, can be strictly liable, even if the seller merely passes on the finished product without making a modification that renders the product defective.
The affidavit of Frank W. Phillips established that he delivered boxes and large hoses bearing the CVH label to many customers in the New Orleans metropolitan area, extending as far west as Norco, Louisiana. These customers included Union Carbide, American Cyanamid, Hooker Chemical, Kaiser Chalmette, Chevron, and Shell Oil Norco, all places where some of the plaintiffs worked. Reilly identified CVH invoices showing asbestos-containing hoses that were sold to Humble Oil & Refining Company (now Exxon-Mobil) in Baton Rouge.[6] These invoices for asbestos-containing hoses and others for asbestos-containing gaskets did not show any other manufacturer's name to identify the products as something other than CVH products. Reilly explained that CVH typically did not show a brand or other identifying *125 name, because it did not want its customers to be able to get the same products from its competitors. Such CVH invoicing practices might be interpreted as marketing or representing these asbestos-containing products as its own. We conclude, therefore, that the evidence the plaintiffs produced is sufficient to show the existence of a genuine issue of material fact as to CVH's status as a manufacturer or professional vendor, thus demonstrating its potential strict liability, which would not require a showing that CVH knew or should have known of the hazardous nature of the product.[7]
According to Reilly, CVH fabricated and supplied asbestos-containing gaskets to Freeport Sulphur Company and DuPont, both of which are sites where some of the plaintiffs show they worked at some time.[8] Reilly also confirmed that gaskets often had to be removed or replaced, and said he was aware that workers would sometimes grind or buff gaskets to remove them if the gaskets had become stuck to the surrounding metal. We note that the Hennegan case involved gaskets in which the asbestos was encapsulated in another polymer, but was released as friable material if the gaskets were ground; there was evidence that the plaintiff in that case participated in grinding such gaskets or packing materials to remove them, and the court found this was sufficient evidence of exposure to impose liability on the gasket manufacturer. See Hennegan v. Cooper/T. Smith Stevedoring Co., Inc., 02-0282 (La. App. 4th Cir.12/30/02), 837 So.2d 96, writ denied, 03-0316 (La.4/21/03), 841 So.2d 794.
Based on our de novo review of the evidence submitted by the plaintiffs in this case, and considering that evidence in light of the proof required by the jurisprudence in other asbestos exposure cases, we conclude that the plaintiffs made a sufficient showing that they could meet their evidentiary burden of proof at trial that CVH manufactured, sold, and delivered asbestos-containing products to sites where the plaintiffs worked and could have been exposed to friable asbestos from CVH products. Thus, the plaintiffs met their burden of proof under LSA-C.C.P. art. 966(C)(2), and summary judgment was inappropriate.[9]

CONCLUSION
Based on the foregoing, the summary judgment in favor of CVH, dismissing all *126 the plaintiffs' claims against it, is reversed. All costs of this appeal are assessed to CVH.
REVERSED AND REMANDED.
NOTES
[1] Information concerning additional allegations made in this lawsuit is outlined in a companion case, Adams v. Owens-Corning Fiberglas Corp., 04-1296 (La.App. 1st Cir.9/23/05), 921 So.2d 972.
[2] After the original petition was filed, many supplemental and amending petitions were filed to substitute plaintiffs for those who had died and to assert wrongful death and survivorship claims. The sixteenth supplemental and amending petition also added many new defendants, including CVH, and set forth additional factual allegations against them and the previously-named defendants.
[3] In the records that were sent to this court in these companion cases, the transcript of the hearing on the motion for summary judgment in this case was mistakenly included in the record for this court's docket number 2004 CA 1296 referenced in footnote 1 of this opinion.
[4] The "unreasonably dangerous per se" theory of products liability enunciated in Halphen was excluded as an available theory of liability under the LPLA for claims arising after its effective date. See Walker v. Babcock Indus., Inc., 582 So.2d 258, 260 (La.App. 1st Cir. 1991).
[5] Like the "unreasonably dangerous per se" theory of product liability applicable to manufacturers, the theories of liability applicable to non-manufacturer vendors were changed significantly by the enactment of the LPLA for claims arising after its effective date. See Matthews v. Wal-Mart Stores, Inc., 97-0449 (La.App. 4th Cir.3/11/98), 708 So.2d 1248, 1249, writ denied, 98-0965 (La.6/5/98), 720 So.2d 681.
[6] Reilly said such sales were rare, and on those occasions, CVH did not alter the asbestos-containing hose material in any way, but just assembled the requisite fittings and resold the assembled hoses to its customer.
[7] There are a number of cases in which asbestos products have been found unreasonably dangerous per se. See, e.g., Halphen, 484 So.2d 110; Hennegan v. Cooper/T. Smith Stevedoring Co., Inc., 02-0282 (La.App. 4th Cir.12/30/02), 837 So.2d 96, writ denied, 03-0316 (La.4/21/03), 841 So.2d 794. Therefore, having found a genuine issue of material fact concerning whether CVH was a manufacturer of products that have been determined to be unreasonably dangerous per se, thereby exposing it to possible strict liability to those plaintiffs who can establish exposure to its products, we pretermit the issue of whether CVH knew or should have known of the hazardous nature of its products, as such a showing is not necessary as to a manufacturer. We note, however, that as early as 1952, the hazards of asbestos exposure were sufficiently well known for asbestosis to be listed as an occupational disease for which benefits were available under Louisiana's workers' compensation law. See 1952 La. Acts, No. 532, § 1.
[8] The work history of each plaintiff is shown on Exhibit "A" to the seventeenth supplemental and amending petition.
[9] In so concluding, we make no factual determination that CVH was a manufacturer or professional vendor of asbestos-containing products or that any of the plaintiffs were actually exposed to asbestos from CVH products. Our conclusion on this motion is merely that the plaintiffs have shown there are genuine issues of material facts concerning these elements of their claims against CVH, all of which must still be proven at trial.