# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-1048

**CARRIE BADON**

**VERSUS**

**R. J. REYNOLDS TOBACCO CO., ET AL.**

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT,
PARISH OF CAMERON, NO. 10-13653,
HONORABLE CHARLEY QUIENALTY, DISTRICT JUDGE AD HOC

\*\*\*\*\*\*\*\*\*\*\*\*

## JIMMIE C. PETERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Elizabeth A. Pickett, Judges.

**AFFIRMED AND REMANDED.**

**Jennifer Jones**
**Jones Law Firm**
**Post Office Box 1550**
**Cameron, LA 70631**
**(337) 775-5714**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Carrie Badon**

**James Nieset**
**Plauché, Smith & Nieset**
**1123 Pithon Street**
**Lake Charles, LA 70601**
**(337) 436-0522**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **R. J. Reynolds Tobacco Co., et al.**

PETERS, J.

Carrie Badon appeals the dismissal on summary judgment of her claim for punitive damages and her claims based on the "unreasonably dangerous *per se*" doctrine in connection with her suit for damages against various tobacco defendants arising out of her contraction of cancer.[1] For the reasons that follow, we affirm.

## DISCUSSION OF THE RECORD

Carrie Badon filed suit for compensatory and punitive damages against numerous tobacco manufacturers and distributors, including R. J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, Philip Morris U.S.A., Inc., Liggett & Myers, Inc., Liggett Group Inc., and Brooke Group, Ltd. (collectively referred to as the tobacco defendants).[2] In her suit, Ms. Badon alleged that she contracted throat, larynx and vocal cord cancer as a result of her consumption of cigarettes manufactured and sold by the tobacco defendants. Through her pleadings, Ms. Badon alleged various theories of recovery and claimed compensatory as well as punitive damages. Among her allegations, Ms. Badon asserted failure to warn, suppression, and unreasonably dangerous *per se* theories of recovery and sought punitive damages pursuant to former La.Civ.Code art. 2315.3.

The tobacco defendants filed several motions for summary judgment seeking, among other things, to have Ms. Badon's claim for punitive damages dismissed and seeking to have other claims dismissed on the basis of federal preemption. Following a hearing on the motions, the trial court rendered judgment granting the tobacco

---

[1]The trial court also granted summary judgment dismissing Ms. Badon's claims based on absolute liability under the "ultrahazardous activity" doctrine. However, Ms. Badon has expressly abandoned her appeal as to the granting of the summary judgment in this regard in view of the Louisiana Supreme Court's decision in *Suire v. Lafayette City-Parish Consolidated Government*, 04-1459, 04-1460, 04-1466 (La. 4/12/05), 907 So.2d 37.

[2]Ray Badon, Russell Badon, Joe Mae Badon Roberson, and Scotty Joseph Badon joined Ms. Badon as party plaintiffs, but Ms. Badon alone filed the appeal currently before us. Thus, we will address the facts and issues only as they relate to Ms. Badon.

defendants' motions for summary judgment as to Ms. Badon's punitive damages claim. The trial court also granted the tobacco defendants' motions for summary judgment as to Ms. Badon's failure to warn and suppression claims, finding that they were "preempted but only with respect to advertising and promotion" and holding that "post-1969 claims regarding Defendants' 'neutralizing' the effect of the mandated warning" were preempted. The trial court also held that Ms. Badon's "unreasonably dangerous per se claims based on post-1969 events" were preempted. Additionally, the trial court designated the summary judgments as final judgments for the purpose of immediate appeal. Ms. Badon has appealed.

## OPINION

### *Punitive Damages*

In addition to her claim for compensatory damages, Ms. Badon sought punitive damages pursuant to former La.Civ.Code art. 2315.3, which provided for such damages in connection with the storage, handling, or transportation of hazardous or toxic substances. While this Article was repealed by 1996 La. Acts No. 2, 1st Ex.Sess., § 1, effective April 16, 1996, section 2 of the Act provided that its provisions would "only be applicable to causes of action which arise on or after the effective date hereof." The Article's applicability to the instant cause of action is not at issue on appeal.

Former La.Civ.Code art. 2315.3 provided in pertinent part as follows:

> In addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances.

Importantly, former La.Civ.Code art. 2315.3 is subject to strict construction, as it imposes a penalty. *Bonnette v. Conoco, Inc.*, 01-2767 (La. 1/28/03), 837 So.2d 1219.

2

In order to obtain a punitive damages award under La.Civ.Code art. 2315.3, the plaintiff must prove that (1) the defendant's conduct was wanton and reckless; (2) the danger created by the defendant's wanton or reckless conduct threatened or endangered public safety; (3) the defendant's wanton or reckless conduct occurred in the storage, handling, or transportation of hazardous or toxic substances; and (4) the plaintiff's injury was caused by the defendant's wanton or reckless conduct. *Id.* The purpose of La.Civ.Code art. 2315.3 is threefold: (1) to penalize and punish tortfeasors for engaging in wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances that cause injury to others; (2) to deter tortfeasors and others who might follow their example from exposing the public to such dangers in the future; and (3) to provide victims injured by such conduct with incentive to act as the prosecutors of penal laws against such wrongdoers. *Ross v. Conoco, Inc.*, 02-299 (La. 10/15/02), 828 So.2d 546. In fact, the "history and the language of the article indicate a legislative determination that the public interest is adequately protected by punishing parties who wantonly or recklessly pollute our state and harm our citizens while storing, handling, or transporting hazardous or toxic substances." *Id.* at 553-54.

The trial court granted summary judgment dismissing Ms. Badon's claim for punitive damages pursuant to La.Civ.Code art. 2315.3 on the basis that the tobacco defendants' conduct was not wanton or reckless and did not occur in the storage, handling, or transportation of the cigarettes. Louisiana Code of Civil Procedure Article 966(B) requires that the trial court grant summary judgment where sought "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and

3

that mover is entitled to judgment as a matter of law." For the following reasons, we agree with the trial court that the tobacco defendants were entitled to summary judgment on the issue as a matter of law because Ms. Badon's allegations of liability do not pertain to the tobacco defendants' conduct in storing, handling, or transporting the cigarettes. In so holding, we make no comment as to whether the other elements necessary for a La.Civ.Code art. 2315.3 claim were satisfied or whether federal law preempts such claims.

In *Williams v. A.C. & S., Inc.*, 700 F.Supp. 309 (M.D.La. 1988), the plaintiff sought punitive damages under La.Civ.Code art. 2315.3 in connection with injury to his lungs allegedly sustained through the manufacture and distribution of asbestos products. The defendants filed a motion to strike the punitive damages claims, which motion the court granted. In so holding, the court explained that "Defendants' fault, if any, arises from the manufacture, design, and labelling of the products-conduct which, although within the realm of products liability, lies outside the scope of article 2315.3." *Id.* at 310. Likewise, Ms. Badon's allegations of liability pertain to the tobacco defendants' manufacturing, design, and labeling activities, and not to their storage, handling, or transportation of cigarettes. We note that the Louisiana Supreme Court in *Ross*, 828 So.2d 546, relied on the reasoning in *Williams* to reject a claim for punitive damages under La.Civ.Code art. 2315.3 where the plaintiffs claimed that the defendants conspired to commit battery and to misrepresent fraudulently the harmful effects of vinyl chloride. In other words, the mere fact that a potentially hazardous product causes injury does not automatically bring a defendant allegedly involved with the product within the ambit of La.Civ.Code art.

4

2315.3; the plaintiff must still prove that the defendant stored, handled, or transported the product that caused the injury.

Ms. Badon has cited us to jurisprudence in support of her claim, but the jurisprudence she has cited is not compelling. Specifically, Ms. Badon cites jurisprudence that stands for the proposition that a manufacturer is not automatically insulated from punitive damages under La.Civ.Code art. 2315.3 simply due to its status as a manufacturer. We agree. Nevertheless, the jurisprudence further holds that in order for a manufacturer to be subject to punitive damages under La.Civ.Code art. 2315.3, the manufacturer's fault must have arisen out of the storage, handling, or transportation of toxic or hazardous substances. As set forth above, Ms. Badon's allegations pertain to causation of her cancer due to the manufacture, design, and labeling activities of the tobacco defendants, and not to the storage, handling, or transportation of the cigarettes. In fact, Ms. Badon's own expert, Dr. K. Michael Cummings, acknowledged that cigarettes are not hazardous unless they are smoked.

Notwithstanding, Ms. Badon cites jurisprudence wherein summary judgment was precluded due to a genuine issue of material fact as to whether a defendant "handled" a product, and she contends that the tobacco defendants in the instant case "handled their product in such a manner as to increase its addictive propensity." However, semantics is insufficient to create a genuine issue of material fact. Regardless of the term she used, Ms. Badon's allegation sounds in the design of the cigarettes, and not the handling of the cigarettes as the term is used in La.Civ.Code art. 2315.3. Importantly, Ms. Badon has failed to cite any case in which a court has imposed punitive damages under La.Civ.Code art. 2315.3 upon a manufacturer/distributor of cigarettes in favor of a plaintiff who has sustained injury

5

from smoking cigarettes. Accordingly, we affirm the trial court's grant of summary judgment as to the La.Civ.Code art. 2315.3 claim.

### *Preemption*

Ms. Badon based her claim for damages in part on allegations of the tobacco defendants' failure to warn, neutralizing the effect of the mandatory warning, and suppression of information. She also alleged that cigarettes are unreasonably dangerous *per se*. The trial court granted the tobacco defendants' motion for summary judgment as to Ms. Badon's failure to warn and suppression claims, finding that they were "preempted but only with respect to advertising and promotion" and holding that "post-1969 claims regarding Defendants' 'neutralizing' the effect of the mandated warning" were preempted. The trial court also held that Ms. Badon's "unreasonably dangerous per se claims based on post-1969 events" were preempted.[3] Ms. Badon has appealed only the trial court's rejection of her unreasonably dangerous *per se* claim.

Ms. Badon's claim that cigarettes are unreasonably dangerous *per se* is based on *Halphen v. Johns-Manville Sales Corp.*, 484 So.2d 110, 118 (La.1986), which held that a plaintiff can recover against the manufacturer of a product if the product is "unreasonably dangerous per se, i.e., too dangerous to be placed on the market." The elements of a liability claim based on the product's "unreasonably dangerous *per se*" character require proof, first, that the product is in fact unreasonably dangerous *per se*. If the product itself is dangerous in fact and if its danger-in-fact outweighs its utility, it is unreasonably dangerous *per se*. This is explained in *Adams v. Owens-*

---

[3]The significance of the year 1969 is because that was the effective date of the Federal Cigarette Labeling and Advertising Act, as amended by the Public Health Cigarette Smoking Act of 1969 (15 U.S.C.A. § 1331, *et seq.*), which requires that every package of cigarettes sold in the United States bear a warning label and bans cigarette advertisements on electronic communication media.

*Corning Fiberglas Corp.*, 04-1589 (La.App. 1 Cir. 9/23/05), 923 So.2d 118, 122, *writ denied*, 05-2318 (La. 3/10/06), 925 So.2d 519, as follows:

> Louisiana law recognizes products which are "unreasonably dangerous per se" as a separate class of defective products. For products in this category, liability may be imposed solely on the basis of the intrinsic characteristics of the product irrespective of the manufacturer's intent, knowledge, or conduct. A product is unreasonably dangerous per se if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or not, outweighs the utility of the product. This theory considers the product's danger-in-fact, not whether the manufacturer perceived or could have perceived the danger, because the theory's purpose is to evaluate the product itself, not the manufacturer's conduct. Likewise, the benefits are those actually found to flow from the use of the product, rather than as perceived at the time the product was designed and marketed. The fact that a risk or hazard related to the use of a product was not discoverable under existing technology or that the benefits appeared greater than they actually were are both irrelevant. *Halphen*, 484 So.2d at 113-14.

Once a plaintiff has established the unreasonably dangerous *per se* character of the product, in this case cigarettes, liability is imposed solely on the basis of the intrinsic characteristics of the product. The remaining elements of the claim are then simple. In the blunt and substantively accurate language of the trial court, the plaintiff must prove only that "they're selling[,] I smoked[,] and [I'm] dying."

The decision in *Halphen*, 484 So.2d at 118, equated "unreasonably dangerous per se" with "too dangerous to be placed on the market." The preemption assignment of error does not involve a determination on the merits of whether cigarettes are unreasonably dangerous *per se*. Rather, the question is whether, as a matter of law, the claim itself is preempted by federal law.

Pursuant to the Supremacy Clause of Article VI of the United States Constitution, state law may be preempted by federal provisions if Congress has either enacted a clear expression of that intent or it has legislated so comprehensively in a

field that it has left no room for state regulation. *Epoch Wellsite Servs. v. Ortego*, 03-547 (La.App. 3 Cir. 11/5/03), 858 So.2d 827 (citing *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 104 S.Ct. 2694 (1984)), *writ denied*, 03-3348 (La. 2/13/04), 867 So.2d 693. Additionally, preemption will be found when it is impossible to comply with both the federal and state provisions or when application of state law stands as an obstacle to the accomplishment and execution of Congress's full objectives and purposes. *Id.*

Ms. Badon argues that *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608 (1992), is controlling on the preemption issue and that it is in her favor. In *Cipollone*, the plaintiff sued certain cigarette manufacturers, alleging that they were responsible for the death of his mother, a long-time cigarette smoker. The plaintiff asserted various claims, including breach of express warranty, failure to warn consumers of smoking hazards, fraudulent misrepresentation of smoking hazards to consumers, and conspiracy to deprive the public of medical and scientific information about smoking. The *Cipollone* decision was that the express language of the Labeling Act preempted some, but not all, common law damages actions. Ms. Badon argues that *Cipollone* remains the authority in determining what is preempted by the Labeling Act and that, because there is no express language in the Act forbidding the application of Louisiana's unreasonably dangerous *per se* cause of action, it is not preempted.

Ms. Badon's reliance on *Cipollone* is misplaced. That case dealt with express preemption, the foreclosure of state action by express language in a congressional enactment. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 121 S.Ct. 2404 (2001). Conflict preemption occurs when state law stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014 (1982). Conflict preemption may exist even in the absence of an express statement of preemptive intent. *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 120 S.Ct. 1913 (2000). The present case concerns conflict preemption and not express preemption.

The trial court concluded that Ms. Badon's unreasonably dangerous *per se* claims were preempted because a ruling that cigarettes are unreasonably dangerous *per se* would have the effect of imposing a ban on the manufacture/sale of cigarettes where Congress has not enacted a ban. Our *de novo* review of the summary judgment record causes us to reach the same conclusion. In *Food & Drug Administration v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 137, 139, 120 S.Ct. 1291, 1203, 1204 (2000), the United States Supreme Court stated that "Congress, however, has foreclosed the removal of tobacco products from the market" and that "[a] ban of tobacco products . . . would . . . plainly contradict congressional policy." The court in *Insolia v. Philip Morris Inc.*, 128 F.Supp.2d 1220, 1224 (W.D.Wis. 2000), after pointing to Congress's manifest policy in favor of keeping cigarettes on the market, stated:

> Plaintiffs are correct that there is no law or regulation that preempts their claim that it is actionable negligence for defendants to continue to manufacture and sell cigarettes once they realized the danger that cigarettes posed. What preempts their claim is Congress's considered decision that the sale of cigarettes is not only not illegal but part of a market the government supports.

Nevertheless, Ms. Badon urges in her appellate brief that "[t]he fact that the defendants may be found liable for these actions does not equate to a ban on the marketing of their product." The phrase "these actions" as used in this argument can mean only the manufacture and sale of cigarettes. We cannot agree with Ms. Badon's

9

argument.  Indeed, if Ms. Badon succeeds in proving the unreasonably dangerous *per se* character of cigarettes, she will have established a precedent for liability that cigarette manufacturers can avoid only by taking the product off the market.  Thus, Ms. Badon will have effectively utilized Louisiana law to ban the sale of cigarettes in this state, in contravention of congressional policy foreclosing the removal of tobacco products from the market.  Thus, the doctrine of federal conflict preemption applies.  Therefore, as a matter of law, the tobacco defendants were entitled to summary judgment dismissing Ms. Badon's claim based on the theory that cigarettes are unreasonably dangerous *per se*.  Accordingly, we affirm the trial court's grant of summary judgment dismissing this claim.

### DISPOSITION

For the foregoing reasons, we affirm the grant of the summary judgments and remand this case to the trial court for further proceedings.  We assess costs of this appeal to Carrie Badon.

**AFFIRMED AND REMANDED.**

10