COOKS, Judge.
| ^Relator, Associated Electric & Gas Insurance Services, Ltd. (hereafter Associated), seeks supervisory writs from the district court judgment denying its motion for summary judgment.
FACTS AND PROCEDURAL HISTORY
This case involves survival and wrongful death actions filed by Plaintiffs-Relators, Jeannie Hurst Simmons, and her daughters, Tressa and Brianna. Jeannie Simmons was married to Kyle Simmons, and they had three children together, Tressa, Brianna and Christopher.
In March 2001, the Sabine River Authority of Louisiana (hereafter SRA), which operated the Toledo Bend Dam pursuant to a license issued by the Federal Power Commission, made a decision to open the flood gates of the dam. This allegedly led to catastrophic flooding of the Sabine River downstream from the dam.
Plaintiffs contend they, and other residents of the flooded area, were required to depend entirely on their own means of transportation to reach land. On March 22, 2001, Kyle Simmons used a 14-foot long aluminum boat to transport his daughters to school, bringing along his young son, Christopher. On the return trip home after dropping the girls off, Kyle and Christopher were thrown from the boat and killed. Plaintiffs alleged this unfortunate accident occurred because Kyle was unable to negotiate the swollen Sabine River in his small boat.
Plaintiffs filed suit against various defendants, including the SRA and Associated, which is the excess insurer of the SRA. Plaintiffs allege the SRA was negligent in the following particulars: (1) its decision to release water from the floodgate; (2) its failure to warn Plaintiffs of the potential for flooding; and, (3) its failure to provide alternate transportation for Plaintiffs. Plaintiffs allege that Associated is liable to them as an excess insurer of the SRA. Although Plaintiffs |4settled their claims against the SRA and its primary insurer, their claims against Associated, as excess insurer, are still pending.
Associated filed a motion for summary judgment, arguing Plaintiffs’ claims are preempted by federal law and, alternatively, that the SRA neither owed nor breached a duty to Plaintiffs. The trial court denied Associated’s motion for summary judgment, and Associated sought writs to this court for a review of that ruling. For the following reasons, finding no error in the trial court’s ruling, we deny the writ application.
ANALYSIS
The law is clear that federal preemption “fundamentally is a question of congressional intent.” English v. Gen. Elec. Co., 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990). In Louisiana Public Service Commission v. Federal Communications Commission, 476 U.S. 355, 368-69, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986) (citations omitted), the United States Supreme Court stated:
Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, e.g., where *1179 compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for states to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.
Associated argues Plaintiffs’ state law claims are preempted by the Federal Power Act (FPA), 16 U.S.C. § 791a et seq., which Associated contends vests the Federal Power Commission (FPC) and its successor agency, the Federal Energy Regulatory Commission (FERC), with exclusive authority to issue licenses to and regulate hydropower facilities in navigable waters. Citing California v. F.E.R.C., 495 U.S. 490, 110 S.Ct. 2024,109 L.Ed.2d 474 (1990), and First Iowa Hydro-Electric Cooperative v. Federal Power Commission, 328 U.S. 152, 66 S.Ct. 906, 90 L.Ed. 1143 (1946), Associated contends, while the FPA grants the federal government exclusive control over the |sengineering, economic and financial aspects of the federally licensed hydroelectric projects, 16 U.S.C. § 821 permits states to regulate the appropriation of water for irrigation or municipal purposes. Thus, because a federal license was issued for the operation of the Toledo Bend Project, Associated contends that federal preemption extends to any regulations pertaining to the engineering, economic, and financial aspects for the Toledo Bend Project. Associated further argues the state’s only authority with regard to the Toledo Bend Project is limited to regulations relating to property rights, which it insists are not implicated here because Plaintiffs are not making any property damage claims.
Plaintiffs counter that their claims are not barred by federal preemption. They argue the application of Louisiana’s personal injury laws have nothing to do with the engineering, economic, or financial aspects of the Toledo Bend Project, noting specifically that Associated has been unable to cite any cases holding that a state’s personal injury laws are preempted by the FPA.
With regard to the issue of preemption, this Court, in Badon v. R.J. Reynolds Tobacco Co., 05-1048, pp. 7-8 (La.App. 3 Cir. 7/12/06), 934 So.2d 927, 933, stated:
Pursuant to the Supremacy Clause of Article VI of the United States Constitution, state law may be preempted by federal provisions if Congress has either enacted a clear expression of that intent or it has legislated so comprehensively in a field that it has left no room for state regulation. Epoch Wellsite Servs. v. Ortego, 03-547 (La.App. 3 Cir. 11/5/03), 858 So.2d 827 (citing Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984)), writ denied, 03-3348 (La.2/13/04), 867 So.2d 693. Additionally, preemption will be found when it is impossible to comply with both the federal and state provisions or when application of state law stands as an obstacle to the accomplishment and execution of Congress’s full objectives and purposes. Id.
We also held in Epoch Wellsite Servs. v. Ortego, 03-547, p. 2 (La.App. 3 Cir. 11/5/03), 858 So.2d 827, 829, writ denied, 03-3348 (La.2/13/04), 867 So.2d 693, that “there is a strong presumption against federal preemption.”
| (Although the FPA authorizes the FERC to regulate and issue licenses for hydropower facilities in navigable waters, that alone is not sufficient to support a finding that Plaintiffs’ wrongful death and survival claims are preempted by the FPA. *1180 The courts have held “[federal law will override state law under the Supremacy Clause when (1) Congress expressly preempts state law; (2) Congressional intent to preempt may be inferred from the existence of a pervasive federal regulatory scheme; or (3) state law conflicts with federal law or its purposes.” Frank v. Delta Airlines Inc., 314 F.3d 195, 197 (5th Cir.2002) (citing English v. Gen. Elec. Co., 496 U.S. 72, 78-79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990)); see also Villas at Parkside Partners v. City of Farmers Branch, Tex., 675 F.3d 802 (5th Cir.2012).
After a review of the record, we find the trial court did not err in denying Associated’s motion for summary judgment because questions of fact existed whether the factors necessary for total federal preemption are present in this case.
For conflict preemption to apply, compliance with both the federal and state provisions must be impossible or the state law must serve to impede federal objectives. We are not convinced from the present record that any conflict exists between state tort laws and the FPA or that state law hinders any congressional objectives. While Associated notes that 16 U.S.C. § 803(c) specifically provides for property damage claims arising out of the operation of a federally licensed hydro-electric project, Plaintiffs are not seeking property damages. Associated also directs our attention to Simmons v. Sabine River Authority, No. 2:10 CV 1846, slip op., 2012 WL 1458088 (W.D.La.4/26/12). In Simmons, the United States District Court for the Western District of Louisiana found plaintiffs’ claims for property damage resulting from the release of flood waters from the dam in 2009 was preempted.[1] 17Associated has not established that Congress has expressed a similar intent to preempt state tort law.
The more troublesome question here is whether field preemption exists in this case, i.e., does the scope of the FPA “manifest[s] the intention to occupy the entire field of regulating” hydro-electric projects. Napier v. Atl. Coast Line R.R. Co., 272 U.S. 605, 611, 47 S.Ct. 207, 209, 71 L.Ed. 432 (1926). Field preemption exists when Congress “has legislated so comprehensively in a field that it has left no room for state regulation.” Badon, 934 So.2d at 933 (citations omitted). Associated argues field preemption applies here because the FPA evidences a legislative intent to preempt the field of hydro-electric power insofar as state laws pertain to the “engineering, economic, and financial aspects” of the Toledo Bend Project. Plaintiffs counter it is absurd to suggest that Congress intended to preempt all state law personal injury claims by authorizing FERC to issue a license to the Toledo Bend Dam. Plaintiffs also argue the assertion that Congress intended a broad “field preemption” to apply to the FPA are not supported by the jurisprudence. They point this court to the case of Hendricks v. Dynegy Power Marketing, Inc., 160 F.Supp.2d 1155, 1156-57 (S.D.Cal.2001), wherein the court was called upon to interpret whether Congress intended the FPA to entirely occupy the field of energy production:
On its face, Plaintiffs’ complaint alleges only violations of state law. The Court concludes that Congress did not intend for the federal government to entirely occupy the field with the Federal Power Act, thereby completely preempting Plaintiffs’ state law claims and convert *1181 ing them into federal questions. Further, although Plaintiffs’ claims might conceivably be cast in federal terms, a plaintiff is the master of his or her own claims; the Court need not recast Plaintiffs’ state causes of action into federal causes because Plaintiffs’ claims can all be resolved with reference to or resolution of substantial federal questions or issues.
(Emphasis added.)
1 sAssociated has cited no provision of the FPA or the operating license issued to the SRA that speaks to personal injury actions. Further, Plaintiffs point to several provisions in the power sales agreement entered into between the SRA and FERC which delineate the considerable power granted the SRA in operating the dam. Article V of the agreement provides, “The Authorities shall have the right to operate the reservoir ... to control properly the flow of the Sabine River for the purposes of performing the Authorities’ statutory functions.” One of the statutory functions is set forth in La.R.S. 38:2325(10)(c), which provides the SRA shall have the power to control the waters of the Sabine River “for the prevention of devastation of lands from recurrent overflow and the protection of life and property in such district from uncontrolled flood waters.”
The action taken by the SRA, the release of water from the floodgate, arguably was not made with any concern for the “development, transmission, and utilization of power across, along, from, or in” Toledo Bend Lake, which Section 4(e) of the FPA described is the purpose of FERC’s issuing licenses for hydro-electric projects. It reasonably can be argued this decision more so comports with the mandate of La.R.S. 38:2325(10)(c), i.e., that the SRA control the waters of the Sabine River “for the prevention of devastation of lands from recurrent overflow and the protection of life and property in such district from uncontrolled flood waters.” (Emphasis added.) At a bare minimum, there are questions of fact as to whether the decision in this instance, to open the dam and release the floodwater, is governed by the SRA’s statutory obligations under state law or fall exclusively within the regulations of FERC pursuant to the FPA.
Shortly after oral argument in this matter, Associated filed a supplemental brief with this court directing our attention to a recent decision by the United States Supreme Court, Kurns v. Railroad Friction, — U.S. —, 132 S.Ct. 1261, — L.Ed.2d —(2012), wherein the Court found state law claims for defective design and failure to warn fell within the lfllocomotive equipment regulation preempted by the Locomotive Inspection Act (LIA), as that field was defined by Napier. Associated maintains this case definitively holds that field preemption applies to state tort claims in all areas regulated by federal statute. An examination of the Kurns opinion indicates it stops far short of Associated’s contention, and its holding is more properly limited to a single statute addressing locomotive safety. In Kurns, the court’s decision was based on its earlier ruling in Napier, which specifically involved the LIA (or in that case, its predecessor the BIA, Boiler Inspection Act).[2] We note Justice Kagan’s concurring opinion in Kums cast “doubt [that the] Court would decide Napier [ ] in *1182 the same way today” and that “[v]iewed through the lens of modern preemption law, Napier is an anachronism.” Id. at 1270. Particularly relevant here is Justice Kagan’s comment that under more recent jurisprudence, “Congress must do much more to oust all of state law from a field. See, e.g., New York State Dept. of Social Servs. v. Dublino, 413 U.S. 405, 415, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973) (rejecting preemption even though Congress had enacted a ‘detailed’ and ‘comprehensive’ regulatory scheme).” Id.
Justice Sotomayor, concurring in part and dissenting in part (and joined by two other justices), also believed “the Court might decide Napier differently today.” Id. at 1271. She noted the LIA’s lack of an express preemption clause, and noted “our recent cases have frequently rejected field pre-emption in the absence of statutory language expressly requiring it.” Id., (quoting Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me., 520 U.S. 564, 617, 117 S.Ct. 1590, 1618, 137 L.Ed.2d 852 (1997) (Thomas, J., dissenting)).
ImHere there are no similar decisions involving the FPA and its grant of authority to FERC to regulate the operation of hydro-electric projects. The law therefore, to us, is not as clear as that present in Kums, which the majority therein found was controlled by the 85-year old holding in Napier which specifically involved the field of locomotive safety.[3] When that factor is added to the clear presumption that exists against preemption, we find the decision in Kums is not on all fours with the present case and does not mandate the granting of Associated’s motion for summary judgment as a matter of law.
Associated also argues, in the alternative, that even if Louisiana law applies to this case, Plaintiffs’ claims should still be dismissed because Associated’s insured, the SRA, did not breach a duty owed to Plaintiffs. Associated argues, quoting Pitre v. Louisiana Tech University, 95-1466, p. 11 (La.5/10/96), 673 So.2d 585, 591, cert. denied, 519 U.S. 1007, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996) (citations omitted), “[i]f the facts of a particular case show that the complained of condition should be obvious to all, the condition may not be unreasonably dangerous and the defendant may owe no duty to the plaintiff.” Associated contends the SRA owed no duty to Kyle and Christopher Simmons because the dangerous condition caused by the flooding was obvious.
Even if the condition presented by the floodwater was considered an obvious danger, it does not preclude recovery on Plaintiffs’ part. In Socorro v. City of New Orleans, 579 So.2d 931, 941 (La.1991), our supreme court noted a defendant’s “duty [is] separate and apart from any knowledge the plaintiff had or should have |n had of the danger he was encountering.” Instead, “the plaintiffs knowledge and con *1183 duct is considered only to determine the extent of his comparative negligence.” Id.
In any event, a motion for summary judgment is inappropriate to dismiss a negligence action when questions of fact exist regarding the duties owed and any breach of the same. “Questions of negligence are generally inappropriate for disposition by summary judgment.” Cobb v. Delta Exports, Inc., 03-38, p. 4 (La.App. 3 Cir. 6/4/03), 847 So.2d 739, 742, writs denied, 03-1906, 03-1936 (La.10/31/03), 857 So.2d 483, 485.
DECREE
For the foregoing reasons, the writ application is denied.
WRIT DENIED.
AMY, J., dissents and assigns reasons.

. The parties in the instant case and the parties in the Simmons v. Sabine River Authority case are not related.

. In 1915, Congress enacted the LIA to expand the coverage of the BIA of 1911, which prohibited railroads from using a steam locomotive unless its boiler and parts were in “proper condition and safe to operate.” The LIA expanded the BIA's coverage to the “entire locomotive and all parts and appurtenances thereof.” To ensure compliance, the statute required that locomotives be inspected by the Interstate Commerce Commission (now the Department of Transportation).

. Although Congress did not express an intent to preempt more stringent state safety regulations for locomotive workers in either the BIA or LIA, the Napier court found the intent to preempt was implied by the statute's overall purpose. However, considering the clear intent of the BI A/LI A was to protect locomotive workers, it is difficult to rationalize how preempting more stringent safety regulations advances that intent. It is ironic that the result of the Kums holding, in practical effect, means that a statute enacted approximately 100 years ago by Congress to protect locomotive workers from potentially dangerous equipment now serves to protect the manufacture of that equipment from liability should these workers suffer injury as a result of that equipment. Although Associated relies heavily on the holding in Kums, Plaintiffs could reasonably argue that case is an anachronism in the law which more recent minds may not follow in finding field preemption in other federal regulatory schemes.