745 So.2d 806 (1999)
Richard E. LIGEIKIS and Steven R. Quigley, Plaintiffs-Appellants,
v.
STATE FARM FIRE AND CASUALTY CO., et al., Defendants-Appellees/Appellants.
No. 31,954-CA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1999.
Writ Denied January 28, 2000.
*808 Gainsburgh, Benjamin, David Meunier & Warshauer by Irving J. Warshauer, New Orleans, Counsel for Plaintiffs-Appellants.
Walter C. Dunn, Monroe, Counsel for Defendant-Appellant, Allstate Ins. Co.
Theus, Grisham Davis & Leigh by Phillip D. Myers, Monroe, Counsel for Defendant-Appellee, USAA.
Hayes, Harkey, Smith & Cascio by Charles S. Smith, Monroe, Counsel for Defendant-Appellee, State Farm Fire & Casualty.
Before NORRIS, BROWN, STEWART, GASKINS and KOSTELKA, JJ.
NORRIS, Chief Judge.
The plaintiffs, Richard Ligeikis and Steven Quigley, together with one defendant, Allstate Insurance Company, appeal a summary judgment dismissing all claims against another defendant, United Services Automobile Association ("USAA"). Finding that genuine issues of material fact remain unresolved, we reverse and remand.

Factual and procedural background
According to the summary judgment evidence, Ligeikis and Quigley are principals in Emmaco Unlimited, a construction company in Tucker, Georgia, a suburb of Atlanta. Emmaco's line of work is renovating nursing homes, and in November 1994 they were engaged to install a new nursing station at a home in Shreveport. To avoid disrupting the residents of the home, Ligeikis and Quigley planned to work overnight: they would leave Georgia early in the morning, reach Shreveport around 7 p.m., install the prefabricated module, and then drive straight back after the job was complete. They used a Ford van leased by Emmaco and insured by State Farm.
Ligeikis employed his son, Steve Ligeikis, as a carpenter and arranged for him to join them on this job. Steve lived in Rapid City, South Dakota with his wife, Lisa, but was apparently staying in Georgia or South Carolina to work for his dad. Steve testified by deposition that he was normally paid by the job or by the hour. On out-of-town projects he also received a per diem stipend of 10 hours' pay to cover motel and meals; he testified he was not "paid to drive," although carrying tools and material to and from a site was essential to the work. He further testified that he normally met his dad at a job site, but on this particular occasion he met Ligeikis and Quigley in Atlanta and rode with them in the Ford van. Steve was insured through an auto policy purchased by Lisa and issued by USAA in South Dakota.
All three men were tired after they completed the job around 2 a.m., and Steve volunteered to drive the first leg of the return trip while his dad and Quigley napped. A few miles east of Monroe on I-20, he apparently dozed off and struck the rear bumper of a semi trailer, causing the van to flip onto the driver's side and skid into the median. Both passengers were seriously injured.
Ligeikis and Quigley filed the instant suit against Steve and USAA, his wife's auto liability insurer; against State Farm, Emmaco's auto liability insurer and Quigley's UM carrier; and against Allstate, Ligeikis's UM carrier. The plaintiffs ultimately settled their claims with all defendants except USAA and Allstate. Allstate was later dismissed by summary judgment.
USAA answered and moved for summary judgment, admitting that its policy "nominally covered" Steve, but asserting its business use exclusion:
EXCLUSIONS.
A. We do not provide Liability Coverage for any person: * * *
7. Maintaining or using any vehicle while that person is employed or otherwise engaged in any business or occupation other than the auto business, farming or ranching. This exclusion does not apply to the maintenance or use of a *809 private passenger auto, a pickup or van you own, or a trailer used with these vehicles.
In support it attached a copy of the policy, an affidavit stating that the policy had been issued in South Dakota, and portions of Ligeikis's deposition. The plaintiffs opposed the motion, filing an additional portion of Ligeikis's deposition, portions of Quigley's deposition, and the accident report. After a hearing on the exception in April 1998, the District Court issued a judgment rejecting USAA's motion for summary judgment. In extensive written reasons, the court found significant factual issues whether Steve was in the course and scope of his employment when the accident occurred.
Prior to a trial setting on May 26, however, the court again took up USAA's motion. The parties jointly introduced Steve's deposition. Stating that it had reconsidered its prior ruling, the court granted the summary judgment dismissing all claims against USAA with full and complete prejudice. The court referred to oral reasons which have not been included in the appellate record. From this judgment both plaintiffs and Allstate have appealed.

Applicable law
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966 A(2). After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. Art. 966 C(1). The burden of proof rests with the mover. Art. 966 C(2); Ebarb v. Guinn Bros. Inc., 31,426 (La.App. 2 Cir. 1/20/99), 728 So.2d 487. Appellate review of summary judgments is de novo, utilizing the same criteria that guide the District Court's grant of the judgment. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191.
The interpretation of an insurance contract is usually a legal question which may be properly resolved by motion for summary judgment. State Farm Mutual Auto. Ins. Co. v. Casualty Reciprocal Exch., 600 So.2d 106 (La.App. 2 Cir.1992). However, summary judgment declaring a lack of insurance coverage should not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the summary judgment evidence, under which coverage could be afforded. Reynolds v. Select Properties Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180; Kelly v. Sneed, 27,171 (La.App. 2 Cir. 8/23/95), 660 So.2d 118, writ denied 95-2350 (La.12/8/95), 664 So.2d 426. Moreover, the determination whether an employee's acts fell within the course and scope of his employment is normally fact intensive and not suitable for summary judgment. Orgerm? v. McDonald, 93-1353 (La.7/5/94), 639 So.2d 224; Soileau v. D & J Tire Inc., 97-318 (La.App. 3 Cir. 10/8/97), 702 So.2d 818, writ denied 97-2737 (La.1/16/98), 706 So.2d 979. Various factors bear on whether an accident occurring en route to or from work should be viewed as occurring in the course of employment. Stephens v. Justiss-Mears Oil Co., 312 So.2d 293 (La.1975); Yates v. Naylor Indus. Services Inc., 569 So.2d 616 (La.App. 2 Cir.1990), writ denied 572 So.2d 92 (1991).
All parties to this appeal urge that the law of South Dakota should apply to the interpretation of the USAA policy. As Louisiana's only connection with the case is the situs of the accident, we agree. La. C.C. arts. 3515, 3537; Anderson v. Oliver, 97-1102 (La.App. 3 Cir. 1/7/98), 705 So.2d 301, writ denied 98-0755 (La.5/8/98), 718 So.2d 434.
An insurance policy is the law between the parties. If the policy is unambiguous, its terms must be construed according to their plain and ordinary meaning, and cannot be enlarged or diminished *810 by judicial construction. American Family Mutual Ins. Co. v. Elliot, 523 N.W.2d 100 (S.D.1994). Although ambiguous provisions of insurance policies must be construed liberally in favor of the insured and strictly against the insurer, the court may not seek out a "strained or unusual meaning for the benefit of the insured." National Sun Indus. Inc. v. South Dakota Farm Bureau Ins. Co., 596 N.W.2d 45 (S.D.1999), and authorities therein.
The South Dakota Financial Responsibility of Vehicle Owners and Operators law provides:
An owner's policy of liability insurance * * * shall insure the person named therein and any other person as insured, using any insured vehicle or vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of the vehicle or vehicles within the United States * * * subject to limits exclusive of interests and costs, with respect to each insured vehicle, as follows: twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to the limits for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident * * *.
S.D.C.L. § 32-35-70.
An injury sustained by an employee while going to or from work is not generally deemed to arise out of and in the course of employment. South Dakota Public Entity Pool v. Winger, 566 N.W.2d 125 (S.D.1997). However, there are certain well-recognized exceptions to this rule depending on the nature, circumstances and conditions of the employment and cause of the injury. Pickrel v. Martin Beach Inc., 80 S.D. 376, 124 N.W.2d 182 (1963). The words "in the course of" refer to the time, place and circumstances under which the accident took place; for certain employees, the course of employment is necessarily broader than for others. See, e.g., Krier v. Dick's Linoleum Shop, 78 S.D. 116, 98 N.W.2d 486 (1959); South Dakota Public Entity Pool v. Winger, supra.

Discussion
The plaintiffs and Allstate urge that the instant business use exclusion is ambiguous as applied to the facts of the case, and thus must be construed to provide coverage. They further argue that the summary judgment evidence is not sufficient to resolve every genuine factual issue as to whether Steve was in the course and scope of his employment when the accident occurred. South Dakota Public Entity Pool v. Winger, supra.
The thrust of USAA's argument is that the business use exclusion in its automobile policy is unambiguous and, under applicable South Dakota law, excludes any coverage to Steve for any liability that may arise from his operation of a non-owned business van. American Family Mutual Ins. Co. v. Elliot, supra. Because the risk inherent in the drive would not have arisen but for the employment, USAA argues the accident must be considered employment-related. Krier v. Dick's Linoleum Shop, supra. It further argues that even if the multiple-factor test of Louisiana law were applied, Steve would be found to be in the course and scope of his employment with Emmaco, thus precluding coverage. Yates v. Naylor Indus. Services, supra.
At the outset, we pretermit consideration of the appellants' contention that this business use exclusion is ambiguous.[1] Instead, we note that in analyzing a Louisiana Statute virtually identical to S.D.C.L. § 32-35-70, the Louisiana Supreme Court *811 has held that the public policy embodied by the statute is to benefit all injured persons and give protection and coverage to all insureds. Marcus v. Hanover Ins. Co., 98-2040 (La.6/4/99), 740 So.2d 603, rehearing denied; La. R.S. 32:900 B(2). The court concluded that business use exclusions may violate that public policy. Id., at p. 3, 740 So.2d at 605. The court surveyed nationwide jurisprudence which holds that various forms of the business use exception conflict with public policy. Id., at p. 4; 740 So.2d at 606. We are of course cognizant that the accidents in Marcus and Krider v. Dixon, 609 So.2d 1089 (La.App. 2 Cir.1992), involved the insureds' use of their own personal vehicles, and not company (or leased) vehicles. However, the same rationale would apply if Steve is found to be not employed or otherwise engaged in any business or occupation at the time of the accident. In light of the broad public policy concerns, and the fact sensitive nature of the employment question, we are not prepared to state as a matter of law that the instant business use exclusion does not contravene § 32-35-70.
Moreover, as the District Court originally held, the summary judgment evidence does not resolve all the factual issues necessary to determine whether Steve was engaged in any business or occupation at the time of the accident. It is obvious that but for his employment with Emmaco he would not have been on I-20 near Monroe or driving the company van. However, the return trip from work is normally not considered to be in the course and scope of the employment. Driessen v. Schiefelbein, 67 S.D. 645, 297 N.W. 685, 687 (1941); Aadland v. St. Luke's Midland Regional Med. Center, 537 N.W.2d 666 (S.D.1995). The summary judgment evidence shows that Steve received an hourly wage for time worked, not for travel, with a per diem stipend for motel and meals, not for travel. Steve's deposition states that he volunteered to drive the van, but he was not hired for that purpose and was not under specific directions or orders to do so. Finally, there is no evidence that he was traveling from one job to another.
While the summary judgment evidence may create an inference that the accident was indeed in the course and scope of Steve's employment for Emmaco, we find that it does not rise to the level of excluding every genuine issue of material fact. Soileau v. D & J Tire Inc., supra; Mayfield v. Imperial Fire & Cas. Ins. Co., 95-0046 (La.9/5/95), 659 So.2d 727. For these reasons the summary judgment will be reversed and the case remanded for further proceedings.

Conclusion
For the reasons expressed, the summary judgment dismissing all claims against USAA is reversed and the case remanded to the District Court for further proceedings. Costs of this appeal are assessed to the appellee, USAA.
REVERSED AND REMANDED.
GASKINS, J., dissents with written reasons.
KOSTELKA, J., dissents for the reasons assigned by J. GASKINS.
GASKINS, J., dissenting.
I respectfully dissent from the opinion of the majority. The facts submitted to the trial court supported that Steve Ligeikis was in the course and scope of his employment and these facts were uncontested. Steve was in his employer's van driving his co-workers back to their place of business; the van contained work-related equipment which they were returning to the office. Even though he was supposedly not "on the clock," he did receive remuneration regardless of whether it was called a "per diem" or "travel pay"from his employer to make it "worth his while" to work on and travel to and fromthis out-of-town job. These facts are sufficient to establish that he was "employed or engaged in any business or occupation" at the time of the accident.
*812 In Marcus v. Hanover Insurance Company, 98-2040 (La.6/4/99), 740 So.2d 603, the Louisiana Supreme Court found the business exclusion contravened public policy when the insurance contract excluded from coverage the named insured while operating his insured car in any business other than an auto business. The court found the underlying purpose of the Louisiana Motor Vehicle Safety Responsibility Law and La. R.S. 22:655(D) was to provide compensation for persons injured by the operation of an insured vehicle. That public policy is not present in the case at bar. Here the insurance covered the employee's private vehicle and the business exclusion operated to prohibit coverage to the company vehicle that the employee was driving.
I would affirm the trial court's decision.
NOTES
[1] Neither the plaintiffs nor Allstate have suggested a construction of the exclusion that is overbroad or leads to absurd consequences, and we are unaware of any South Dakota (or Louisiana) case that has declared the exception ambiguous. Cf. United Services Auto. Ass'n v. Reid, 255 A.D.2d 990, 680 N.Y.S.2d 340 (1998).