859 So.2d 821 (2003)
Shannon FREEMAN, Plaintiff-Appellee,
v.
Allen P. PHILAN, Wray Ford, Inc. and Reliance Insurance Company, Defendants-Appellants.
Nos. 37,685-CA, 37,684-CW, 37,687-CW.
Court of Appeal of Louisiana, Second Circuit.
October 9, 2003.
Rehearing Denied November 7, 2003.
*822 Pettiette, Armand, Dunkelman Woodley, Byrd & Cromwell, by Donald J. Armand, Jr., Taylor, Porter, Brooks & Phillips, by W. Shelby McKenzie, Counsel for Defendant-Appellant RLI Ins. Co.
Sam N. Gregorio, Amy-Elizabeth Brainard, Counsel for Plaintiff-Appellee Shannon Freeman.
Zelda W. Tucker, for Defendant-Appellee Allstate Ins. Co.
Abrams & Lafargue, by Reginald W. Abrams, Karmel Mister Willis, for Defendant-Appellee Allen P. Philan.
Lunn, Irion, Salley, Carlisle & Gardner, by Jack E. Carlisle, Jr., for Defendants-Appellees Reliance Ins. Co., La. Ins. Guaranty Association, Wray Ford Inc. and Allen P. Philan.
Before BROWN, STEWART, and GASKINS, JJ.
STEWART, J.
In this consolidated matter, RLI Insurance Company ("RLI") is appealing the grant of plaintiff, Shannon Freeman's ("Freeman"), motion for partial summary judgment finding that RLI's excess insurance coverage for defendant Wray Ford drops down to provide dollar one coverage due to the insolvency of the underlying insurer Reliance Insurance Company ("Reliance"). Allstate Insurance ("Allstate") is appealing the trial court's denial of its motion for summary judgment on the issue of whether a personal insurance policy issued to Allen Philan ("Philan") properly excludes coverage for the accident at issue. For the reasons expressed hereafter, we affirm in part, reverse in part, and render.

FACTS
This suit arises out of a rear-end collision that occurred on May 24, 1999, when a *823 Wray Ford, Inc., shuttle bus driven by Allen Philan ran into the rear of a 1996 Honda Accord driven by Shannon Freeman. The accident occurred on Bert Kouns Industrial Loop where it intersects with I-49. The intersection is controlled by a series of traffic lights. At around 7:40 a.m., Ms. Freeman was stopped in traffic in the eastbound left-hand lane. The traffic was stopped at the traffic light just west of where the I-49 overpass travels over the roadway. The traffic signal was red.
Contemporaneously, Philan was also traveling eastbound on Bert Kouns Industrial Loop in the left-hand lane. Philan did not bring the Wray Ford, Inc. shuttle bus to a stop and struck the rear of Freeman's vehicle. The force of the impact caused Freeman's vehicle to travel forward and strike the vehicle stopped in front of her, a 1997 BMW driven by Kristina Dominique Owen.
On May 2, 2000, Freeman filed suit against Philan, Wray Ford, and Reliance Insurance Company. Reliance had issued a policy to Wray Ford which covered liability arising out of the operation of the shuttle bus with policy limits of $1,000,000.00. However, after Freeman's suit was filed, Reliance was placed in liquidation by the Commonwealth Court for Pennsylvania. Accordingly, Freeman filed a supplemental and amending petition on January 14, 2002, in which she added the Louisiana Insurance Guaranty Association ("LIGA") and RLI Insurance Company ("RLI") as defendants. Freeman alleged that LIGA was obligated to Wray Ford as a resident of Louisiana to cover the claim against the now insolvent insurer. RLI was named as a defendant as Wray Ford's excess insurance carrier with policy limits of $5,000,000.00.
In a second supplemental and amending petition filed on July 5, 2002, Freeman added Philan's personal automobile liability insurer, Allstate, as a defendant. She also filed a motion for partial summary judgment on the legal question of whether the excess insurance provided by RLI drops down to become the primary insurer due to Reliance's insolvency, thus making LIGA a secondary insurer. On October 4, 2002, Freeman filed an amending motion for partial summary judgment requesting a finding that Allstate's liability coverage ranks second after RLI's, thus bumping LIGA to third. RLI filed a cross motion for summary judgment on the identical issue requesting a finding that its coverage does not kick in unless the judgment ultimately rendered exceeds the $1,000,000.00 underlying limits. On November 22, 2002, Allstate filed a motion for summary judgment denying coverage on the basis that its coverage did not extend under the circumstances of the present case because of the policy's business use exclusion for non-owned automobiles. The motions came for hearing on December 2, 2002, and the matters were submitted on briefs. On January 24, 2003, the court issued an oral bench ruling granting the plaintiff's motion and supplemental motion for summary judgment on the issue of coverage ranking and denying RLI's and Allstate's motions for summary judgment. A judgment to that effect was submitted and signed on February 11, 2003. The instant appeal and writ applications by RLI and Allstate followed.

DISCUSSION
Construction of Insurance Policies
An insurance policy is a contract which constitutes the law between the parties. If the wording of the policy is clear and expresses the parties' intent, the policy must be enforced as written. Pareti v. Sentry Indem. Co., 536 So.2d 417, 420 421 (La.1988). Absent a conflict with statutory *824 provisions or public policy, insurers are entitled by their agreement with the insured to limit their liability and to impose reasonable conditions upon the obligations contractually assumed in a given policy. Crocker v. Roach, 33,507 (La.App.2d Cir.8/23/00), 766 So.2d 672. Summary judgment declaring a lack of coverage under a policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed facts shown by the evidence supporting the motion, under which coverage could be afforded. Crocker, at 675.
Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. La. C.C. art. 2056; Cadwallader v. Allstate Ins. Co., XXXX-XXXX (La.6/27/03), 847 So.2d 577. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. That strict construction principle applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.
Coverage Under the RLI Policy
We find that the trial court correctly found that the RLI insurance policy was more than an umbrella policy and should cover the claim arising from the accident at issue. Under the language of the RLI policy, RLI would be responsible for the loss in excess of the retained limit. The retained limit is defined on page nine of the policy, as the amount stated in item four of the declarations. Item four of the declarations page states that the retained limit is zero. Therefore, under number two of the limits of liability section for the RLI policy, RLI would be responsible for the ultimate net loss in excess of zero, which would cover the claim of Shannon Freeman. This places them as primary insurer up to the policy limits of $5 million. RLI could have listed the retained limit as the amount of the underlying insurance carrier as did the insurer in Kelly v. Weil, 563 So.2d 221 (La.1990).
In Kelly, supra, the Louisiana Supreme Court ruled that excess/umbrella policies are to be divided into the following three categories:
(1) Excess policies that state that the underlying limit of the excess coverage is dependent on the "collectability" of the primary limits;
(2) Excess policies that describe the excess coverage as the excess of the limits of the policies "covered" in the schedule of underlying coverage attached to the policy;
(3) Excess policies that define "retained limit" as "the greater of applicable limits of the scheduled underlying policies and the applicable limits of any other insurance collectible by the insured."
In the third category, the supreme court held that whether the excess policy drops down depends upon the definition of "retained limit" and whether or not the "retained limit" creates any ambiguity in the contract of insurance. Because the retained limit in this case is clearly "0," it is clear that the RLI policy is not a true excess carrier, but that it has posited itself as a primary obligor on a claim against Reliance. Consequently, RLI's reliance on Kelly, supra, is misplaced.
The limits of liability provision of the RLI policy issued to Wray Ford carefully spells out the responsibility of RLI under each of the three circumstances noted above: (1) A loss covered under scheduled *825 underlying insurance; (2) A loss covered under unscheduled insurance; and (3) A loss not covered either under scheduled or unscheduled underlying insurance. The RLI umbrella policy provides:
II LIMITS OF LIABILITY
A. Regardless ..., we shall only be liable for the ultimate net loss in excess of:
1. The applicable limits of scheduled underlying insurance stated in Item 5, of the Declarations, for occurrences covered by scheduled underlying insurance, plus the limits of any unscheduled underlying insurance which also provides coverage for such occurrences; or
2. The unscheduled underlying insurance or the retained limit, which is greater, for occurrences covered by unscheduled underlying insurance and by this policy only; or
3. The retained limit, for occurrences covered by this policy only; ...
Subpart A(1) is applicable to the plaintiff's claims because the accident was covered by the underlying insurance. Unquestionably, the scheduled underlying insurance policy had automobile liability limits of $1,000,000.00. Subpart A(2) is inapplicable to this case. However, Subpart A(3) is directly applicable because RLI's liability begins when its retained limit is exhausted. Here that limit is $0, so coverage begins at dollar one.
The court properly noted RLI simply could have avoided liability by simply requiring the insured to maintain a retained limit in the same amount as the underlying insurance. The trial court focused on Numbers 2 and 3 of "Limits of Liability." The policy states that RLI is liable for the ultimate net loss in excess of the retained limit. Thus, RLI is liable for the ultimate net loss in excess of zero.
In this case, the language is not clear, and is not sufficiently limited to create mutually exclusive categories of coverage. The RLI policy is ambiguous, and that ambiguity must be resolved against RLI. Moreover, the Financial Impairment exclusion provision of the RLI policy does not apply in this case because liability attaches at the retained limit of zero and is not contingent on the insolvency of the underlying carrier.
Lastly, RLI's policy is not a true excess policy. The trial judge properly found that RLI's policy provides primary coverage to Freeman. In order for the RLI policy to be a true excess policy it would have had to have chosen a retained limit in excess of zero. Finally, under La. R.S. 22:1386, LIGA is the obligor of last resort because all other possible insurance coverage must be exhausted before coverage under LIGA is triggered.
In sum, the trial judge correctly ruled that the RLI policy provided primary coverage for the damages suffered by Freeman.
Liability Under the Allstate Policy
Allstate issued a policy of automobile liability insurance to Allen P. Philan covering his three vehicles for the period of February 13, 1999, to August 13, 1999. The accident at issue in the present case took place on May 24, 1999, while Philan was driving a shuttle bus owned by his employer Wray Ford, Inc. Philan's policy with Allstate contains the following exclusion of liability:
This coverage does not apply to liability for:
* * *
(3) a non-owned auto while being used in any business or occupation of an insured person. However, coverage does apply while you, your chauffeur, or domestic *826 servant are using a private passenger auto or trailer.
Allstate filed its motion for summary judgment on the basis of this exclusion and the allegedly uncontradicted fact that the accident occurred while Philan was using his employer's 1998 Ford shuttle bus while in the course and scope of his employment. Freeman alleges in her petition and Philan admits in his opposition to the motion for summary judgment that he was driving a non-owned auto while in the course and scope of his employment.
There is no question that the exclusion, as written, clearly precludes coverage for liability incurred by the insured while driving a non-owned vehicle while engaging in his occupation. Therefore, the two questions which remained for the trial court were: (1) Whether the evidence presented on the motion for summary judgment indicates undisputed facts giving rise to the exclusion, and; (2) whether the exclusion is otherwise unenforceable due to a conflict with statutory provisions or public policy. The trial court answered the latter question in the affirmative by finding the Louisiana Supreme Court's public policy reasoning in Marcus v. Hanover Insurance Co., Inc., 1998-2040 (La.6/4/99), 740 So.2d 603, applicable to the business use exclusion in Allstate's policy thus rendering it unenforceable. We disagree.
Marcus, supra, is factually distinguishable from the present case and those distinctions make the public policy reasoning relied on in Marcus, supra, inapplicable as a basis for declaring the business use exclusion in Allstate's policy unenforceable. In Marcus, supra, the supreme court found the business use exclusion to be contrary to the public policy stated in La. R.S. 32:851, et seq., when it excluded from coverage the named insured while operating his personal car. The court noted that the statutory scheme was intended to attach financial protection to the vehicle rather than to the operator. In the instant case, Philan was not operating his personal car insured under the Allstate policy while engaged in his occupation. Philan was operating his employer-owned vehicle in the course and scope of his employment. This employer-owned vehicle was at all times covered under the Reliance liability policy. The public policy considerations that the supreme court faced in Marcus, supra, are not present here. See Kinchen v. Lewis, 2002-2198 (La.App. 1st Cir.2/3/03), 844 So.2d 36.
However, in moving for summary judgment the burden of proof that the exclusion endorsement is applicable is on the insurer who filed the motion. Bumgardner v. Terra Nova Ins. Co. Ltd., 35,615 (La.App.2d Cir.1/23/02), 806 So.2d 945. Consequently, in order to show that the business use exclusion is applicable in the present case, Allstate was obligated to make a prima facie showing that Philan was driving a non-owned vehicle in the course and scope of his employment. A review of the record indicates that there is no genuine issue of material fact which precludes a finding that Philan was driving his employer's vehicle while in the course and scope of his employment, thus making the business use exclusion applicable. The fact was alleged by Freeman in her petition and admitted by Philan in his memorandum in opposition to the motion for summary judgment.
Philan's argument in opposing the motion that the exclusion does not apply because the shuttle bus he was driving could qualify as a "private passenger auto" which is excepted from the provisions of the exclusion is unpersuasive. While Philan may have used the shuttle bus to transport passengers from one destination to another, he did so in a shuttle bus owned by a business for a "commercial" *827 and not a "private" purpose. The suggestion that because "private passenger auto" is not defined in the policy, the commercially owned shuttle bus might qualify as one, is without merit.
We are likewise unpersuaded by Freeman's reliance on this court's decision in Ligeikis v. State Farm Fire and Casualty Company, 31,954 (La.App.2d Cir.10/27/99), 745 So.2d 806, 839. In Ligeikis, supra, two plaintiffs were injured when the driver of the van they were traveling in dozed off and the van flipped on the interstate. The parties were returning to Georgia after doing a renovation project in Shreveport, Louisiana. They were traveling in a van leased by their employer. Among the parties sued was the driver and his wife's auto liability insurer, USAA.
The trial court granted USAA's motion for summary judgment on the basis of the business use exclusion in its policy. The court of appeal reversed finding that there was a genuine issue of material fact as to whether the driver was in the course and scope of his employment. In citing the applicability of the Marcus, supra, public policy concerns, this court stated that "if Steve is found to be not employed or otherwise engaged in any business or occupation at the time of the accident" the same rationale would apply. No such doubt exists in the present case. Philan was admittedly in the course and scope of his employment, and no party has urged anything to the contrary. Allstate's insurance covered his private vehicle, and the business use exclusion operated to prohibit coverage to the commercial vehicle that Philan was driving.
Accordingly, we find that coverage under Allstate's policy for the loss suffered by the plaintiff under the circumstances of this case is clearly excluded and that the trial court erred in denying Allstate's motion for summary judgment.

CONCLUSION
Based on the foregoing, we affirm the trial court's ruling that the RLI policy provides primary coverage for the damages sustained by Freeman and must be exhausted before coverage under LIGA is triggered. We reverse the trial court's denial, Allstate's motion for summary judgment and render summary judgment in favor of Allstate. Costs assessed equally to RLI and Allen Philan.
AFFIRMED IN PART. REVERSED IN PART AND RENDERED.

APPLICATION FOR REHEARING
Before BROWN, STEWART, GASKINS, PEATROSS, and MOORE, JJ.
Rehearing denied.