962 So.2d 446 (2007)
ROBINSON BROTHERS, INC.
v.
Vercy CARTER, Boutit, Inc. and Progressive Security Insurance Company.
No. 2005 CA 2452.
Court of Appeal of Louisiana, First Circuit.
February 14, 2007.
Opinion on Rehearing May 4, 2007.
*447 Thomas D. Fazio, Baton Rouge, for Plaintiff/Appellee, Robinson Brothers, Inc.
Keith D. Jones, Baton Rouge, for Plaintiff/Appellee, Robinson Brothers, Inc.
Dianne J. Marshall, New Orleans, for Defendant/Appellant Vercy Carter.
W. Shelby McKenzie, Baton Rouge, for Defendant/Appellant RLI Insurance Company.
Court composed of DENNIS R. BAGNERIS, Sr., Judge MICHAEL E. KIRBY, and Judge ROLAND L. BELSOME (serving as Judges ad hoc by special appointment of the Louisiana Supreme Court).
DENNIS R. BAGNERIS, Sr., Judge, Ad Hoc.
The Appellants, Robinson Brothers, Inc. and Louisiana Insurance Guaranty Association (LIGA), appeal the judgment of the district court granting RLI Insurance Company's (RLI) Motion for Summary Judgment and dismissing the Appellants' claims. We affirm.

Facts
There is no dispute as to the facts of this case. In late 1999, Vercy Carter brought his 1998 Lincoln Navigator to Robinson Brothers for repair over the Labor Day weekend. During the weekend Carter's vehicle was stolen from Robinson Brothers and was found three weeks later "stripped" and damaged.
Robinson Brothers begin repairing the vehicle and dealt with Progressive Security Insurance Company (PSIC) as the collision carrier. PSIC issued a check to Carter in the amount of $15,705.91. The repairs to the vehicle totaled $19,531.51. Neither Carter nor PSIC paid for the repairs done to the Navigator and the legal battle begin when Robinson Brothers filed suit against PSIC and Carter seeking recovery for the repairs.

Procedural History
The procedural history is as follows:
1. Robinson Brothers filed suit against PSIC and Carter for repairs made to Carter's vehicle.
2. PSIC filed an Answer and a Cross Claim against Robinson Brothers seeking recovery of the funds paid to Carter.
3. Carter filed a Reconventional Demand claiming that his vehicle contained valuable personal property when it was stolen.
4. Robinson Brothers filed an Answer denying the Cross Claim filed by PSIC and the Reconventional Demand filed by Carter.
5. Robinson Brother's insurance company, Reliance Insurance was declared insolvent in October of 2001.
6. LIGA assumed the defense for Robinson Brothers on the Reconventional Demand *448 filed by Carter and the Cross Claim filed by PSIC.
7. The Cross Claim filed by Progressive was dismissed on November 7, 2002.
8. Carter added LIGA as a defendant in his Reconventional Demand on January 29, 2004.
9. Robinson Brothers and LIGA filed a Third Party Demand against RLI (the Appellee herein) based on the 1999 case Freeman v. Philan, (La.App. 2 Cir. 10/9/03) 859 So.2d 821 writ denied, 2/6/04 (discussed infra).
10. Carter added RLI as a defendant to his suit.
11. RLI filed a Motion for Summary Judgment and Robinson Brothers and LIGA field a Cross Motion for Summary Judgment.
On August 3rd 2005, the district court granted RLI's Motion for Summary Judgment and denied Robinson Brothers and LIGA's Cross Motion for Summary Judgment. It is from this Judgment that Robinson Brothers and LIGA take the instant appeal.[1]

Assignments of Error
The Appellants offer two assignments of error for this Court to review: (1) that the district court erred in granting RLI's Motion for Summary Judgment and declaring that the commercial umbrella liability policy issued by RLI to Robinson Brothers does not provide primary coverage for the Reconventional Demand asserted by Carter; (2) that the district court erred in denying the Cross Motion for Summary Judgment of LIGA and Robinson Brothers, Inc.

Applicable Law

Summary Judgment
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's determination of whether a summary judgment is appropriate. Duplantis v. Dillard's Dept. Store, 02-0852 (La.App. 1 Cir. 5/9/03), 849 So.2d 675, 679, writ denied, 03-1620 (La.10/10/03), 855 So.2d 350. A motion for summary judgment should only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The initial burden of proof is on the moving party. However, on issues for which the moving party will not bear the burden of proof at trial, the moving party's burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial; failure to do so shows there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2); Duplantis, 849 So.2d at 679-80. The court must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, p. 17 (La.2/29/00), 755 So.2d 226, 236; Adams v. Owens-Corning Fiberglas Corp. XXXX-XXXX, p. 4 (La.App. 1 Cir. 9/23/05) 923 So.2d 118, 122.

Interpretation of a Contract
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Carbon v. Allstate *449 Ins. Co., 97-3085, p. 4 (La.10/20/98), 719 So.2d 437, 439; Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763. The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. See La. Civ.Code art.2045; Carbon, 719 So.2d at 439; Louisiana Ins., 630 So.2d at 763.
Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. See La. Civ Code art.2047; Peterson v. Schimek, 98-1712, p. 5 (La.3/2/99), 729 So.2d 1024, 1028-29; Carbon, 719 So.2d at 440-441; Reynolds, 634 So.2d at 1183. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. Carrier v. Reliance Ins. Co., 99-2573, p. 11-12 (La.4/11/00), 759 So.2d 37, 43; Peterson, 729 So.2d at 1029. The rules of construction "do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent." Succession of Fannaly v. Lafayette Ins. Co., 01-1355, p. 4 (La.1/15/02), 805 So.2d 1134, 1138; (quoting Peterson, 729 So.2d at 1029).
Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. La. Civ.Code art.2056; Carrier, 759 So.2d at 43; Louisiana Ins., 630 So.2d at 764. "Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer." Carrier, 759 So.2d at 43. That strict construction principle "applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable." Carrier, 759 So.2d at 43-44, (emphasis in original); see also Louisiana Ins., 630 So.2d at 770.
If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Fannaly, 805 So.2d at 1137; Louisiana Ins., 630 So.2d at 764. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. Peterson, 729 So.2d at 1029; Louisiana Ins., 630 So.2d at 764. "The determination of whether a contract is clear or ambiguous is a question of law." Louisiana Ins., 630 So.2d at 764; see also Cadwallader v. Allstate Ins. Co. XXXX-XXXX, p. 4 (La.6/27/03) 848 So.2d 577, 580.

Assignment of Error # 1
The Appellants maintain that the district court erred in granting RLI's Motion for Summary Judgment and declaring that the commercial umbrella policy issued by RLI to Robinson Brothers does not provide primary coverage for the Reconventional Demand asserted by Carter. In simpler terms, the issue is whether upon the insolvency of Reliance, the RLI policy provides first coverage for the claims asserted by Carter.
The Appellants rely on Freeman v. Philan 2003-37,685 (La.App. 2 Cir. 10/9/03) 859 So.2d 821, writs denied, 03-3098, 865 So.2d 723, 03-3213, 865 So.2d 728, 03-3385, 865 So.2d 735 (La.2/6/04) arguing that RLI had issued the same commercial *450 umbrella liability policy to Robinson Brothers as it did in Freeman. They maintain that based on Freeman, Robinson Brothers and LIGA sought a declaration that RLI provide primary coverage for the claims asserted by Carter as plaintiff-in-reconvention.
RLI argues that the Freeman case is "plainly wrong" and that it is not binding on this Court.
We have adopted the rationale and language from Edna J. Huggins v. Gerry Lane Enterprises, et al., 2005-2665, 950 So.2d 750, (La.App. 1 Cir. 11/3/06), wherein the issues presented are exactly the same as the instant case. This Court in Huggins found:
Drop down coverage occurs when an insurance carrier of a higher level of coverage is obligated to provide the coverage that the carrier of the immediately underlying level of coverage has agreed to provide. (citation omitted) There are several Louisiana Supreme Court cases examining whether coverage under an umbrella policy drops down to take the place of coverage that would have been provided by an insolvent primary insurer. Ultimately, the resolution of this issue depends on the policy language in the excess policy.
Huggins, 2005-2665, p. 5, 950 So.2d 754.
We must review the instant matter de novo and look at the four corners of the insurance policy provided by RLI in order to decipher whether the district court erred.
RLI issued a "Commercial Umbrella Liability Policy" to Robinson Brothers Inc. from April 15, 1999 to April 15, 2000. This policy was a renewal of the policy Robinson Brothers held from April 15, 1998 to April 15, 1999.
Section II of RLI's policy issued to Robinson Brothers reads (in pertinent part) as follows:
LIMITS OF LIABILITY
A. Regardless . . . we shall only be liable for the ultimate net loss in excess of:
1. the applicable limits of scheduled underlying insurance stated in Item 5, of the Declarations for occurrences covered by scheduled underlying insurance, plus the limits of any unscheduled underlying insurance which also provides coverage for such occurrences; or
2. the unscheduled underlying insurance to the retained limit, whichever is greater, for occurrences covered by unscheduled underlying insurance and by this policy only; or
3. The retained limit. . . .
This case is no different from Freeman wherein the Court noted:
Subpart A(1) is applicable to the plaintiffs claims because the accident was covered by the underlying insurance. Unquestionably, the scheduled underlying insurance policy had automobile liability limits of $1,000,000.00. Subpart A(2) is inapplicable to this case. However, Subpart A(3) is directly applicable because RLI's liability begins when its retained limit is exhausted. Here that limit is $0, so coverage begins at dollar one.
The court properly noted RLI simply could have avoided liability by simply requiring the insured to maintain a retained limit in the same amount as the underlying insurance. The trial court focused on Numbers 2 and 3 of "Limits of Liability." The policy states that RLI is liable for the ultimate net loss in excess of the retained limit. Thus, RLI is liable for the ultimate net loss in excess of zero.

*451 In this case, the language is not clear, and is not sufficiently limited to create mutually exclusive categories of coverage. The RLI policy is ambiguous, and that ambiguity must be resolved against RLI. Moreover, the Financial Impairment exclusion provision of the RLI policy does not apply in this case because liability attaches at the retained limit of zero and is not contingent on the insolvency of the underlying carrier.
Freeman, 859 So.2d at 825.
In the case at bar, the retained limit of liability as to Robinson Brothers per the RLI policy is "0". The retained limit in the underlying insurance policy provided by Reliance is $1,000,000. In the instant case, the district court referenced Section "H" of the umbrella policy which states:
FINANCIAL IMPAIRMENT
Bankruptcy, rehabilitation, receivership, liquidation or other financial impairment of the insured or any underlying insurer shall neither relieve nor increase any of our obligations under this policy.
In the event there is diminished recovery or no recovery available to the insured as a result of such financial impairment of any insurer providing scheduled underlying insurance or unscheduled underlying insurance, the coverage under this policy shall apply only in excess of the limits of liability stated in the scheduled underlying insurance or unscheduled underlying insurance. Under no circumstances shall we be required to drop down and replace the limits of liability of a financially impaired insurer. Nor shall we assume any other obligations of a financially impaired insurer.
In excerpts taken from Huggins, this Court noted:
In two cases decided the same day, Kelly v. Weil, 563 So.2d 221 (La.1990), and Robichaux v. Randolph, 563 So.2d 226 (La.1990), the supreme court examined situations in which the relevant provisions of the umbrella policies were virtually identical. The court used the Kelly case to summarize the law on this issue. In doing so, it identified three basic types of excess policies, depending on the policy language.
Huggins, 2005-2665, p. 5, 950 So.2d at 754. Further,
The Robichaux case addressed the same issue and reached the same conclusion concerning another umbrella policy falling within the third category of cases described in Kelly. Robichaux, 563 So.2d at 228. Regarding the policy at issue in Robichaux, the supreme court took particular notice of an additional provision providing specifically for the event of insolvency of the underlying insurer. That provision stated that in the event there was no recovery available to the insured as a result of the bankruptcy or insolvency of the underlying insurer, the coverage under the umbrella policy would apply only in excess of the applicable limit of liability specified in the underlying policy or policies. The court commented that this provision made the result in Robichaux "even more compelling than in Kelly," because:
It is evident that the parties to this insurance policy intended and, indeed specifically provided, that [the umbrella coverage] would not drop down in the event of the underlying insurer's insolvency.

Id. at 227-28.
The supreme court revisited the issue in Louisiana Ins. Guar. Ass'n, 630 So.2d 759 (the LIGA case). The *452 court began its analysis by trying to fit the excess policy in that case into the appropriate Kelly category, using the limits of liability section, since these provisions define the scope of coverage. Id. at 762. However, the language of that section did not fit neatly into any of the Kelly categories, so the court examined the policy using the basic precepts of contractual interpretation, as set out in the Louisiana Civil Code and applicable jurisprudence. Id. at 762-63. The policy clearly stated in many of its provisions that it provided "excess" coverage only, and thus fell within the general rule that policies clearly stating they are excess are not required to provide drop down coverage. Id. at 769. The exception to that rule exists only when the policy language creates a "genuine ambiguity" as to the scope of coverage, such as clauses indicating coverage will be provided over underlying "collectible" or "recoverable" insurance, as in the first category of Kelly cases. Id. at 770.

Id. at p. 755. This Court concluded in Huggins that
Having examined the RLI policy, the codal articles governing its interpretation, and the applicable jurisprudence, we are forced to disagree with the second circuit's conclusion regarding the RLI policy. We conclude that the RLI policy falls squarely within the second category described in the Kelly case. The policy language is properly understood not to facilitate a drop down of the excess insurance, because there was scheduled underlying insurance providing coverage for the occurrence, as described in subpart (A)(1), and only that provision is applicable. Therefore, RLI could only be liable for the ultimate net loss in excess of the Reliance policy's applicable limits of $1 million. There is no specific requirement or undertaking in the RLI policy to drop down in the event of the primary insurer's insolvency, so RLI's coverage should not be construed as dropping down. Rather, as discussed in the Robichaux and LIGA cases, the "Financial Impairment" provision in the RLI policy is an anti drop down provision, which clearly expresses that the parties never intended that coverage provided by the RLI policy would drop down in the event of the insolvency of the underlying scheduled insurer.
Id. at p. 9, 950 So.2d at 756-57.
In the instant case, the district court concluded, ". . . Section `H' of the policy provides that RLI will not drop down and cover it because of the insolvency of any underlying scheduled carriers or even unscheduled carriers. So that Reliance's impaired liability does not cause RLI to drop down. And for that reason I'm going to grant the Motion for Summary Judgment in favor of RLI and deny the Motion for Summary Judgment filed by LIGA." In accordance with Huggins, we also find that there was no error by the district court.
The court in Freeman correctly found that the "Financial Impairment" exclusion provision did not apply in the Freeman case, as it does not here, because liability attaches at the retained limit of zero which is not contingent on the insolvency of the underlying carrier. Id at 825.

Assignment of error # 2
In their second assignment of error, the Appellants maintain that the district court erred in denying the Cross Motion for Summary Judgment of LIGA and Robinson Brothers, Inc. Considering the applicable law, it may appear that not to reverse the denial of the Appellant's summary judgment seems somewhat contradictory. *453 Although RLI becomes the primary insurer, the merits of the case are still undecided thus leaving genuine issues of material fact. We are not in a posture to dismiss Robinson Brothers and LIGA and we cannot say that the district court abused its discretion in denying their Cross Motion for Summary Judgment.

Decree
For the reasons stated herein, we reverse the judgment of the district court granting summary judgment in favor of RLI and affirm the judgment of the district court denying the Appellant's Cross Motion for Summary Judgment.
AFFIRMED.
BELSOME, J. concurs with reasons.
BELSOME, J. Concurring.
I respectfully concur in the result but write separately to address the explicit policy language in this case. The RLI policy language in the instant case specifically and unambiguously stated in multiple sections that it absolutely would not drop down to act as a primary insurer in any event, particularly in the event of insolvency of the underlying insurance carrier. This Court's decision should not be misinterpreted to apply in all cases to policyholders whose primary carriers become insolvent; whether an excess policy should cover losses from dollar one in the event of a primary insurer's insolvency shall be evaluated according to the particular facts and circumstances of each case and within the context of the specific policy language.

ON APPLICATION FOR REHEARING
DENNIS R. BAGNERIS, Sr., Judge, Ad Hoc.
The Appellants, Robinson Brothers, Inc. and Louisiana Insurance Guaranty Association (LIGA), appeal the judgment of the district court granting RLI Insurance Company's (RLI) Motion for Summary Judgment and dismissing the Appellants' claims. We affirm.

Facts
There is no dispute as to the facts of this case. In late 1999, Vercy Carter brought his 1998 Lincoln Navigator to Robinson Brothers for repair over the Labor Day weekend. During the weekend Carter's vehicle was stolen from Robinson Brothers and was found three weeks later "stripped" and damaged.
Robinson Brothers begin repairing the vehicle and dealt with Progressive Security Insurance Company (PSIC) as the collision carrier. PSIC issued a check to Carter in the amount of $15,705.91. The repairs to the vehicle totaled $19,531.51. Neither Carter nor PSIC paid for the repairs done to the Navigator and the legal battle began when Robinson Brothers filed suit against PSIC and Carter seeking recovery for the repairs.

Procedural History
The procedural history is as follows:
1. Robinson Brothers filed suit against PSIC and Carter for repairs made to Carter's vehicle.
2. PSIC filed an Answer and a Cross Claim against Robinson Brothers seeking recovery of the funds paid to Carter.
3. Carter filed a Reconventional Demand claiming that his vehicle contained valuable personal property when it was stolen.
4. Robinson Brothers filed an Answer denying the Cross Claim filed by PSIC and the Reconventional Demand filed by Carter.
5. Robinson Brother's insurance company, Reliance Insurance was declared insolvent in October of 2001.
6. LIGA assumed the defense for Robinson Brothers on the Reconventional Demand *454 filed by Carter and the Cross Claim filed by PSIC.
7. The Cross Claim filed by Progressive was dismissed on November 7, 2002.
8. Carter added LIGA as a defendant in his Reconventional Demand on January 29, 2004.
9. Robinson Brothers and LIGA filed a Third Party Demand against RLI (the Appellee herein) based on the 1999 case Freeman v. Philan 37,685, (La.App. 2 Cir 10/9/03); 859 So.2d 821 writs denied, 03-3098, 865 So.2d 723, 03-3213, 865 So.2d 728, 03-3385, 865 So.2d 735 (2/6/04) (discussed infra).
10. Carter added RLI as a defendant to his suit.
11. RLI filed a Motion for Summary Judgment and Robinson Brothers and LIGA field a Cross Motion fro Summary Judgment.
On August 3rd 2005, the district court granted RLI's Motion for Summary Judgment and denied Robinson Brothers and LIGA's Cross Motion for Summary Judgment. It is from this Judgment that Robinson Brothers and LIGA take the instant appeal.[1]

Assignments of Error
The Appellants offer two assignments of error for this Court to review: (1) that the district court erred in granting RLI's Motion for Summary Judgment and declaring that the commercial umbrella liability policy issued by RLI to Robinson Brothers does not provide primary coverage for the Reconventional Demand asserted by Carter; (2) that the district court erred in denying the Cross Motion for Summary Judgment of LIGA and Robinson Brothers, Inc.

Applicable Law

Summary Judgment
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's determination of whether a summary judgment is appropriate. Duplantis v. Dillard's Dept. Store, 02-0852 (La.App. 1 Cir. 5/9/03), 849 So.2d 675, 679, writ denied, 03-1620 (La.10/10/03), 855 So.2d 350. A motion for summary judgment should only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The initial burden of proof is on the moving party. However, on issues for which the moving party will not bear the burden of proof at trial, the moving party's burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial; failure to do so shows there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2); Duplantis, 849 So.2d at 679-80. The court must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, p. 17 (La.2/29/00), 755 So.2d 226, 236; Adams v. Owens-Corning Fiberglas Corp. XXXX-XXXX, p. 4 (La.App. 1 Cir. 9/23/05) 923 So.2d 118, 122.

Interpretation of a Contract
An insurance policy is a contract between the parties and should be construed *455 by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Carbon v. Allstate Ins. Co., 97-3085, p. 4 (La.10/20/98), 719 So.2d 437, 439; Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763. The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. See La. Civ. Code art. 2045; Carbon, 719 So.2d at 439; Louisiana Ins., 630 So.2d at 763.
Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. See La. Civ Code art. 2047; Peterson v. Schimek, 98-1712, p. 5 (La.3/2/99), 729 So.2d 1024, 1028-29; Carbon, 719 So.2d at 440-441; Reynolds, 634 So.2d at 1183. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. Carrier v. Reliance Ins. Co., 99-2573, p. 11-12 (La.4/11/00), 759 So.2d 37, 43; Peterson, 729 So.2d at 1029. The rules of construction "do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent." Succession of Fannaly v. Lafayette Ins. Co., 01-1355, p. 4 (La.1/15/02), 805 So.2d 1134, 1138; (quoting Peterson, 729 So.2d at 1029).
Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. La. Civ.Code art. 2056; Carrier, 759 So.2d at 43; Louisiana Ins., 630 So.2d at 764. "Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer." Carrier, 759 So.2d at 43. That strict construction principle "applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable." Carrier, 759 So.2d at 43-44, (emphasis in original); see also Louisiana Ins., 630 So.2d at 770.
If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Fannaly, 805 So.2d at 1137; Louisiana Ins., 630 So.2d at 764. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. Peterson, 729 So.2d at 1029; Louisiana Ins., 630 So.2d at 764. "The determination of whether a contract is clear or ambiguous is a question of law." Louisiana Ins., 630 So.2d at 764; see also Cadwallader v. Allstate Ins. Co. XXXX-XXXX, p. 4 (La.6/27/03) 848 So.2d 577, 580.

Assignment of Error # 1
The Appellants maintain that the district court erred in granting RLI's Motion for Summary Judgment and declaring that the commercial umbrella policy issued by RLI to Robinson Brothers does not provide primary coverage for the Reconventional Demand asserted by Carter. In simpler terms, the issue is whether upon the insolvency of Reliance, the RLI policy provides first coverage for the claims asserted by Carter.
The Appellants rely on Freeman v. Philan 2003-37,685 (La.App. 2 Cir. 10/9/03) 859 So.2d 821, writs denied, 03-3098, 865 So.2d 723, 03-3213, 865 So.2d 728, 03-3385, 865 So.2d 735 (La.2/6/04) arguing *456 that RLI had issued the same commercial umbrella liability policy to Robinson Brothers as it did in Freeman. They maintain that based on Freeman, Robinson Brothers and LIGA sought a declaration that RLI provide primary coverage for the claims asserted by Carter as plaintiff-in-reconvention.
RLI argues that the Freeman case is "plainly wrong" and that it is not binding on this Court.
We must review the instant matter de novo and look at the four corners of the insurance policy provided by RLI in order to decipher whether the district court erred.
RLI issued a "Commercial Umbrella Liability Policy" to Robinson Brothers Inc. from April 15, 1999 to April 15, 2000. This policy was a renewal of the policy Robinson Brothers held from April 15, 1998 to April 15, 1999.
Section II of RLI's policy issued to Robinson Brothers reads (in pertinent part) as follows:
LIMITS OF LIABILITY
A. Regardless . . . we shall only be liable for the ultimate net loss in excess of:
1. the applicable limits of scheduled underlying insurance stated in Item 5, of the Declarations for occurrences covered by scheduled underlying insurance, plus the limits of any unscheduled underlying insurance which also provides coverage for such occurrences; or
2. the unscheduled underlying insurance to the retained limit, whichever is greater, for occurrences covered by unscheduled underlying insurance and by this policy only; or
3. The retained limit. . . .
In Freeman the Court noted:
Subpart A(1) is applicable to the plaintiff's claims because the accident was covered by the underlying insurance. Unquestionably, the scheduled underlying insurance policy had automobile liability limits of $1,000,000.00. Subpart A(2) is inapplicable to this case. However, Subpart A(3) is directly applicable because RLI's liability begins when its retained limit is exhausted. Here that limit is $0, so coverage begins at dollar one.
The court properly noted RLI simply could have avoided liability by simply requiring the insured to maintain a retained limit in the same amount as the underlying insurance. The trial court focused on Numbers 2 and 3 of "Limits of Liability." The policy states that RLI is liable for the ultimate net loss in excess of the retained limit. Thus, RLI is liable for the ultimate net loss in excess of zero.
In this case, the language is not clear, and is not sufficiently limited to create mutually exclusive categories of coverage. The RLI policy is ambiguous, and that ambiguity must be resolved against RLI. Moreover, the Financial Impairment exclusion provision of the RLI policy does not apply in this case because liability attaches at the retained limit of zero and is not contingent on the insolvency of the underlying carrier.
Freeman, 859 So.2d 825.
In the case at bar, the retained limit of liability as to Robinson Brothers per the RLI policy is "0". The retained limit in the underlying insurance policy provided by Reliance is $1,000,000. In the instant case, the district court referenced Section "H" of the umbrella policy which states:
FINANCIAL IMPAIRMENT
Bankruptcy, rehabilitation, receivership, liquidation or other financial impairment of the insured or any underlying *457 insurer shall nether relieve nor increase any of our obligations under this policy.
In the event there is diminished recovery or no recovery available to the insured as a result of such financial impairment of any insurer providing scheduled underlying insurance or unscheduled underlying insurance, the coverage under this policy shall apply only in excess of the limits of liability stated in the scheduled underlying insurance or unscheduled underlying insurance. Under no circumstances shall we be required to drop down and replace the limits of liability of a financially impaired insurer. Nor shall we assume any other obligations of a financially impaired insurer.
In excerpts taken from Huggins, this Court noted:
In two cases decided the same day, Kelly v. Weil, 563 So.2d 221 (La.1990), and Robichaux v. Randolph, 563 So.2d 226 (La.1990), the supreme court examined situations in which the relevant provisions of the umbrella policies were virtually identical. The court used the Kelly case to summarize the law on this issue. In doing so, it identified three basic types of excess policies, depending on the policy language.
Huggins, 2005-2665, p. 5, 950 So.2d at 754. Further,
The Robichaux case addressed the same issue and reached the same conclusion concerning another umbrella policy falling within the third category of cases described in Kelly. Robichaux, 563 So.2d at 228. Regarding the policy at issue in Robichaux, the supreme court took particular notice of an additional provision providing specifically for the event of insolvency of the underlying insurer. That provision stated that in the event there was no recovery available to the insured as a result of the bankruptcy or insolvency of the underlying insurer, the coverage under the umbrella policy would apply only in excess of the applicable limit of liability specified in the underlying policy or policies. The court commented that this provision made the result in Robichaux "even more compelling than in Kelly," because:
It is evident that the parties to this insurance policy intended and, indeed specifically provided, that [the umbrella coverage] would not drop down in the event of the underlying insurer's insolvency.

Id. at 227-28.
The supreme court revisited the issue in Louisiana Ins. Guar. Ass'n, 630 So.2d 759 (the LIGA case). The court began its analysis by trying to fit the excess policy in that case into the appropriate Kelly category, using the limits of liability section, since these provisions define the scope of coverage. Id. at 762. However, the language of that section did not fit neatly into any of the Kelly categories, so the court examined the policy using the basic precepts of contractual interpretation, as set out in the Louisiana Civil Code and applicable jurisprudence. Id. at 762-63. The policy clearly stated in many of its provisions that it provided "excess" coverage only, and thus fell within the general rule that policies clearly stating they are excess are not required to provide drop down coverage. Id. at 769. The exception to that rule exists only when the policy language creates a "genuine ambiguity" as to the scope of coverage, such as clauses indicating coverage will be provided over underlying *458 "collectible" or "recoverable" insurance, as in the first category of Kelly cases. Id. at 770.
Id. at p. 6-7, 750 So.2d at 755. This Court concluded in Huggins that:
Having examined the RLI policy, the codal articles governing its interpretation, and the applicable jurisprudence, we are forced to disagree with the second circuit's conclusion regarding the RLI policy. We conclude that the RLI policy falls squarely within the second category described in the Kelly case. The policy language is properly understood not to facilitate a drop down of the excess insurance, because there was scheduled underlying insurance providing coverage for the occurrence, as described in subpart (A)(1), and only that provision is applicable. Therefore, RLI could only be liable for the ultimate net loss in excess of the Reliance policy's applicable limits of $1 million. There is no specific requirement or undertaking in the RLI policy to drop down in the event of the primary insurer's insolvency, so RLI's coverage should not be construed as dropping down. Rather, as discussed in the Robichaux and LIGA cases, the "Financial Impairment" provision in the RLI policy is an anti drop down provision, which clearly expresses that the parties never intended that coverage provided by the RLI policy would drop down in the event of the insolvency of the underlying scheduled insurer.
Id. at p. 9, 740 So.2d at 756-57.
In the instant case, the district court concluded, ". . . Section `H' of the policy provides that RLI will not drop down and cover it because of the insolvency of any underlying scheduled carriers or even unscheduled carriers. So that Reliance's impaired liability does not cause RLI to drop down. And for that reason I'm going to grant the Motion for Summary Judgment in favor of RLI and deny the Motion for Summary Judgment filed by LIGA." In accordance with Huggins, we also find that there was no error by the district court.

Assignment of error # 2
In their second assignment of error, the Appellants maintain that the district court erred in denying the Cross Motion for Summary Judgment of LIGA and Robinson Brothers, Inc. Considering the applicable law and this Court's most recent decision in Huggins, we are of the opinion that there was no error by the district court for the reasons stated above.

Decree
We affirm the judgment of the district court granting summary judgment in favor of RLI and affirm the judgment of the district court denying the Appellant's Cross Motion for Summary Judgment.
AFFIRMED.
BELSOME, J. Concurs with Reasons.
BELSOME, J., concurring.
I respectfully concur in the result but write separately to address the explicit policy language in this case. The RLI policy language in the instant case specifically and unambiguously stated in multiple sections that it absolutely would not drop down to act as a primary insurer in any event, particularly in the event of insolvency of the underlying insurance carrier. This Court's decision should not be misinterpreted to apply in all cases to policyholders whose primary carriers become insolvent; whether an excess policy should cover losses from dollar one in the event of a primary insurer's insolvency shall be evaluated according to the particular facts *459 and circumstances of each case and within the context of the specific policy language.
NOTES
[1] The merits of this case are not before this Court.
[1] The merits of this case are not before this Court.